## AMARILLO INDEPENDENT SCHOOL DISTRICT,

v.

## Lionel R. MENO, the State Commissioner of Education in His Official Capacity, and the Texas Education Agency, et al.

No. 3–92–435–CV.

Court of Appeals of Texas, Austin.

May 12, 1993.

Rehearing Overruled July 7, 1993.

---

Don M. Dean, Kevin P. Parker, Underwood, Wilson, Berry, Stein & Johnson, P.C., Amarillo, for appellant.

Dan Morales, Atty. Gen., George Warner, Asst. Atty. Gen., Austin, for Lionel R. Meno, State Com'r of Educ. and TX Educ. Agency.

Daniel A. Ortiz, Arlington, for Teachers Henry Crawford, Suzanne Phillips, Gloria Roberts, Pauline Webb, George Howle and Ronald Gray.

Before POWERS, KIDD and B.A. SMITH, JJ.

POWERS, Justice.

The Amarillo Independent School District (AISD) appeals from a trial-court judgment affirming an order of Lionel R. Meno, Commissioner of Education. We will reverse the order and the judgment and remand the cause to the trial court with instruction that it be remanded to the Commissioner for proceedings not inconsistent with our opinion.

## THE CONTROVERSY

The controversy arises under The Term Contract Nonrenewal Act (the "Act"), Tex. Educ.Code Ann. §§ 21.201–.211 (West 1987 & Supp.1993). We have set out in a footnote the material parts of the Act.[1]

---

**1.** We have supplied the emphasis in the following quotations from the Act:

§ 21.202. Teacher Evaluations
The board of trustees ... shall provide by written policy for the *periodic written evaluation* of each teacher in its employ *at annual or more frequent intervals.* Such evaluation *shall be*
*considered* by the board of trustees prior to any decision by the board not to renew the term contract of any teacher.

§ 21.203. Nonrenewal of Term Contracts
(a) The board of trustees of each school district may choose not to renew the employment of any teacher employed under a term

In March 1989, AISD faced the prospect of reduced revenues for the new school year that would begin September 1, 1989. To accommodate the reduced revenues, the board of trustees determined not to engage for the new school year a large number of teachers employed under expiring term contracts.

Section 21.202 of the Act directs, however, that local boards of trustees consider "periodic written evaluations of each teacher" before deciding "not to renew the term contract of any teacher." In addition, section 21.204(a) of the Act declares that these written evaluations must be considered by the local boards before they decide to propose nonrenewal of a teacher's contract and before they send notices to affected teachers. Section 21.204(a) also imposes an April 1 deadline for such notification.

Under AISD policy, written evaluations of teachers were not required to be completed until June 15 of each year. Faced with the April 1 deadline and incomplete evaluations for the school year 1988–1989, the AISD board considered, for purposes of section 21.204(a), the latest available teacher evaluations—those for the school year 1987–1988. Among others, AISD notified

Henry Crawford, Suzanne Phillips, Gloria Roberts, Pauline Webb, George Howle, and Ronald Gray that the board proposed not to renew their expiring term contracts.[2] Each teacher requested a hearing before the board. After hearing, the board decided in each instance not to renew the teacher's contract after considering, for purposes of section 21.202, his or her evaluation for the school year 1987–1988. The board did not consider written evaluations for the school year 1988–1989 because these evaluations had not been completed. Each teacher appealed to the Commissioner as authorized by section 21.207 of the Act.

## THE COMMISSIONER'S DECISION

After consolidating the six appeals, the Commissioner reversed the AISD decision in each instance, ordering that each teacher be reinstated in the same professional capacity for the succeeding school year. The Commissioner's order declares the theory upon which he acted: The AISD decisions were arbitrary and capricious because (1) sections 21.202 and 21.204(a) of the Act required that the AISD board consider "current year written evaluations" before

contract effective at the end of the contract period.
(b) The board of trustees ... shall establish policies consistent with this subchapter which shall *establish reasons for nonrenewal....*
(c) The board of trustees ... shall establish *policies and procedures for receiving recommendations* from its school administration for the nonrenewal of teacher term contracts....
§ 21.204. Notice
(a) In the event the board of trustees receives a recommendation for nonrenewal, the board, *after consideration of the written evaluations* required by Section 21.202 ... and the reasons for the recommendation, shall, in its sole discretion, either reject the recommendation or shall give the teacher written notice of the proposed nonrenewal *on or before April 1* preceding the end of the employment term fixed in the contract.
§ 21.205. Hearing
(a) If the teacher desires a hearing after receiving notice [the hearing shall be held within 15 days of the teacher's request and shall be closed unless the teacher requests an open hearing].
(b) *The hearing shall be conducted in accordance with rules promulgated by the district.* The board of trustees may designate a person

to serve as an impartial hearing officer to develop a record for consideration by the board. The board shall make its decision based on a review of the record developed by the impartial hearing officer and on oral argument before the board [by] the teacher or the teacher's representative and the district's representative. [Only the first sentence of this subsection was in effect at the time of the board hearings in the present appeal].
§ 21.206. Decision of the Board
[The board shall take such action as it deems lawful and appropriate and notify the employee in writing of its decision within 15 days].
§ 21.207. Appeal
(a) If the teacher is aggrieved by the decision of the board of trustees, he may appeal to the State Commissioner of Education pursuant to Section 11.13 of this code. The commissioner may not substitute his judgment for that of the board of trustees, unless the decision below was arbitrary, capricious, unlawful, or not supported by substantial evidence.
(b) Either party may appeal the commissioner's decision to a district court in Travis County.

2. Each of the six teachers is an appellee in the present appeal, as are the Commissioner and the Texas Education Agency.

deciding not to renew a teacher's term contract, and (2) the board failed to consider "current year" evaluations before making its decisions in the six cases. The latter proposition is undisputed; the first is highly disputed.

There is no explicit "current year" requirement in the text of the Act. If it exists at all, it is only by reason of an implication springing from the statutory text. We should therefore explain the derivation of the Commissioner's "current year" requirement.

The parties have furnished us copies of orders issued by the Commissioner in deciding similar appeals to him under section 21.207 of the Act. The parties do not dispute the accuracy of these copies. In an appeal to the Commissioner styled *Barizon v. Midland Independent School District,* he ruled in 1988 that the nonrenewal decision of a local school board rested on an adequate basis when the board considered (1) a written evaluation for the *preceding* school year coupled with (2) sworn *testimony* about the teacher's current-year performance given by two individuals who would prepare the written evaluation when it became due. The Commissioner expressly overruled the *Barizon* holding in his 1991 decision in an appeal styled *Kelly v. Blooming Grove Independent School District.* He reasoned in *Kelly* that the legislature intended that the Act "provide teachers ... advance notice of perceived deficiencies that might well form the basis of a nonrenewal recommendation." To assure that teachers receive such notice, the Commissioner engrafted upon sections 21.202 and 21.204(a) a general policy requirement that local school boards must employ "current year written evaluations" in their administration of the Act.

In the case now before us, the Commissioner did not attempt an exercise of statutory construction regarding the Act. He simply enforced *Kelly,* noting that he had previously "decided and decreed" that sections 21.202 and 21.204(a) require "current year written evaluations" and this requirement "is dispositive of these [six] appeals."

We believe the Commissioner properly drew from the notice requirements of the Act (sections 21.204(a) and 21.205) an inference that they implied meaningful notice. The qualification of "meaningful" notice is an essential aspect of due process of law. *See Madden v. Texas Bd. of Chiropractic Examiners,* 663 S.W.2d 622, 625–27 (Tex.App.—Austin 1984, writ ref'd n.r.e.). But the Commissioner's order in the present case does *not* rest upon the proposition that AISD failed to give any of the six teachers meaningful notice.

Instead, the Commissioner's order reveals that his decision rests on the idea that his "current year" evaluation requirement, adopted in *Kelly,* is a *requirement of general applicability having binding force in and of itself,* irrespective of whether there has been a want of meaningful notice in any particular case. That is to say, the mere failure of AISD to employ "current year" evaluations in its administration of the Act is sufficient reason for reversing the decisions in the six cases because it is tantamount to a violation of sections 21.202 and 21.204(a) as the Commissioner has construed them; whether a teacher actually received meaningful notice in any particular instance is immaterial.

It is one thing, however, to infer correctly that the Act requires meaningful notice and quite another to enforce that meaning by a requirement of general applicability as the Commissioner has purported to do, a distinction we now address.

## DISCUSSION AND HOLDINGS

From the trial-court judgment affirming the Commissioner's order, AISD brings eight points of error complaining the Commissioner erroneously construed the Act, exceeded his statutory authority, and rendered a decision that was arbitrary and capricious. *See* Texas Administrative Procedure and Texas Register Act, Tex.Rev. Civ.Stat.Ann. art. 6252–13a, § 19(e)(1), (2), (6) (West Supp.1993) (APTRA). AISD brings an additional point of error complaining of the trial court's failure to make findings of fact and conclusions of law.

*Construction of the Act and the Limits of the Commissioner's Authority.* These complaints are interrelated; we shall discuss them together.

■ The "cardinal rule" of statutory construction is to seek out the legislative intent from a general view of the whole enactment; once that has been ascertained, one must assign meaning accordingly to any questioned part of the statute.[3] In the process, one must give the words of the Act an interpretation that is neither forced, nor strained, nor exaggerated. One must assign the words a meaning *suggested* affirmatively by the statutory text and one that the text will fairly sanction and clearly sustain.[4] A statutory text may carry implications, of course, but one may impute an implication to the Act only if one is able fairly to conclude from the text that the legislature *obviously* intended the thing implied. One is *forbidden* to impute an implication to the Act if a legislative intention, excluding the implication, may be gathered from a reasonable interpretation of the statute as it is written.[5]

When one takes a general view of the Act as a whole, one finds its central idea to be crystal clear—the legislature placed administration of the Act almost exclusively in the hands of local school boards and not in the hands of state-level school officials, such as the Commissioner. For example, the Act directs that each local school board establish (1) the substantive "reasons" or grounds upon which the board may decline to renew a term contract, (2) "policies and procedures for receiving recommendations" from school administrators regarding nonrenewals, and (3) rules governing the hearings that must be held before a nonrenewal decision is made—all as set out in sections 21.203(a), (c) and 21.205(b).

■ The Act itself contains no words suggesting affirmatively the Commissioner's "current year" requirement. Section 21.202 declares simply that local school boards must require a "periodic written evaluation of each teacher ... at annual or more frequent intervals," which evaluation the board is obliged to consider "prior to any decision ... not to renew the term contract of [the] teacher." Section 21.-204(a) requires that these written evaluations also be considered by the local school board before it decides to propose nonrenewal of a teacher's term contract in a notice given the teacher affected. From these provisions, in context, it is unreasonable to infer that the legislature *obviously* intended the Commissioner's "current year" requirement. The opposite legislative intention *is* obvious: the legislature intended the timing and frequency of the evaluations to be a matter of *local* policy choices, and this is a reasonable inference of legislative intention that does not require the implication that the Commissioner must attribute to the Act. For these reasons, the Commissioner's interpretation of the Act violates each of the applicable rules of statutory construction listed above.[6]

3. *Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979).

4. *Railroad Comm'n v. Miller,* 434 S.W.2d 670, 672 (Tex.1968).

5. *Massachusetts v. United N. & S. Dev. Co.,* 140 Tex. 417, 168 S.W.2d 226, 229 (1942); *Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 138 (Tex.App.—Austin 1986, writ ref'd n.r.e.).

6. *See supra* notes 3–5 and accompanying text. It is hardly necessary to add that the Commissioner's construction of the Act is not binding on a reviewing court; it lies within the judicial power, not the executive power, to say with final authority what a statute means. But, of course, the Commissioner is required almost daily to interpret the statutes administered by the Central Education Agency. However, if a particular statute is unambiguous, as in the present case, a reviewing court owes no deference to the Commissioner's interpretation. The expressed will of the legislature must be enforced. On the other hand, in the case of an ambiguous statute, the Commissioner's interpretation would be entitled to deference in light of the Commissioner's experience with the statute and the necessity that he will have to enforce it in the administrative sphere. *See generally Stanford v. Butler,* 142 Tex. 692, 181 S.W.2d 269, 273 (1944). The degree of deference is characterized variously by such terms as "respect," "proper weight," or "great weight." Courts ordinarily adopt an agency interpretation of an ambiguous statute provided it is a reasonable interpretation and one in harmony with other statutes and rules. The degree of deference may become particularly great when an agency interpretation is one of long standing and uniform application. *Id.*

More importantly, perhaps, the legislature chose in the Act to place almost all aspects of its administration in the hands of local school boards, including the adoption of policies, procedures, and rules that *these boards* deemed necessary. This impliedly excludes the establishment of policies, procedures, and rules by state-level school officials, so far as administration of the Act is concerned. Because the legislature prescribed the method of administration, that method must be employed exclusively. *Cobra Oil & Gas Corp. v. Sadler*, 447 S.W.2d 887, 892 (Tex.1969).

The Act establishes a single exception to the general proposition that it assigns exclusive authority and discretion to local school boards in matters of administration. The single exception is found in section 21.207 of the Act. This section assigns the Commissioner an adjudicatory function in deciding administrative appeals taken to him from the decisions of local school boards in particular cases; he may substitute his own decision in a case when he finds the local board decision to be "arbitrary, capricious, unlawful, or not supported by substantial evidence." Section 21.207. *Neither the Commissioner nor anyone else has suggested that his adjudicatory power under section 21.207 is inadequate for the revision of a local-board decision when it is made to appear in a particular case that a teacher did not receive meaningful notice, and the section is adequate for that purpose on its face.* This is *not*, therefore, a case where the Commissioner's exercise of his expressly assigned function and power requires, by necessary implication, another power.

*See Key Western Life Ins. Co. v. State Bd. of Ins.*, 163 Tex. 11, 350 S.W.2d 839 (1961) (power to withdraw approval of policy form on specified statutory grounds may not be extended by implication to permit agency to withdraw approval on another ground); *Stauffer v. City of San Antonio*, 162 Tex. 13, 344 S.W.2d 158 (1961) (power to ascertain physical and mental fitness not impliedly given City by statute entitling firefighters to re-employment by City if physically and mentally fit after military leave); *Massachusetts v. United N. & S. Dev. Co.*, 140 Tex. 417, 168 S.W.2d 226 (1942) (statute requiring two sureties on bond, each liable for twice amount of debt secured, may not be altered by implication to permit two sureties undertaking disparate obligations even though debt is twice secured); *Humble Oil & Refining Co. v. Railroad Comm'n*, 133 Tex. 330, 128 S.W.2d 9 (1939) (power to fix certain prices of natural gas not implied by numerous statutory powers for regulation of other aspects of natural gas business); *Commercial Standard Ins. Co. v. Board of Ins. Comm'rs*, 34 S.W.2d 343 (Tex.Civ.App.—Austin 1930, writ ref'd) (power to fix certain insurance sales commissions not implied by numerous statutory powers for regulation of other aspects of insurance business).

By prescribing and enforcing his requirement of general applicability—his policy that sections 21.202 and 21.204(a) require "current year" evaluations in the administration of the Act—the Commissioner has attempted, in effect, to overrule policies promulgated by the legislature and the State Board of Education.[7] As mentioned

---

7. We here set out in context a summary of the Commissioner's duties and powers within the Central Education Agency, as set out in the Education Code enacted by the legislature.

Generally speaking, public education is a function *committed to the legislature* in Tex. Const. art. VII, § 1. The relevant statutes are found in the Education Code, dealing in some detail with all aspects of school affairs.

The statutes establish a basic division for the government of public education, a division between government and financing at the state level and at a local level, the latter being effectuated through local school districts, in the present case an "independent school district."

The state agency for the government of public education is the Central Education Agency, a body of limited and delegated powers (although they are broadly expressed in some instances). All other powers of school government are vested by the legislature in the boards of trustees of the numerous school districts within the state. Tex.Educ.Code Ann. § 11.01 (West 1991). The Central Education Agency is composed, in turn, of four entities, as follows:

(a) The *State Board of Education.* This component is charged to formulate policies through rules for the purpose of "carrying out the duties" that the legislature by statute places upon the Board or the Central Education Agen-

above, the legislature chose, in sections 21.203(a), (c) and 21.205(b), to place in local school boards the power to establish matters of policy and procedure in administering the Act. Exercising this power delegated by the legislature, the AISD school board established a written policy that made teacher evaluations due June 15 of each year. When confronted with this AISD policy choice, and the fact that "current year" evaluations were thus not available for AISD consideration in the six appeals before him, the Commissioner merely recited in his final order that the policy was only a "local policy and ... a date that can be changed" by the AISD board to conform with the Commissioner's contrary policy that "current year" evaluations must be employed in administering the Act. In other words, the Commissioner purported to compel revision of the policy choice that the legislature itself authorized the AISD board to make in *its* discretion.

The Commissioner did much the same with regard to a discretionary choice given AISD by the State Board of Education, the policy- and rule-making component of the Central Education Agency. In a formal rule, the State Board of Education adopted the policy that local school districts may elect to employ the *same* written evaluations for purposes of administering both the Act and the "career ladder" statutory scheme found in sections 13.301–.323 of the Education Code.[8] Tex.Educ.Code Ann.

cy as a whole. *Id.* § 11.2101 (West Supp.1993), § 11.24 (West 1991).
(b) The *State Board of Vocational Education.* This body is composed of members of the State Board of Education when they act in matters pertaining to vocational education. *Id.* § 11.-24(b) (West 1991). It is not necessary here to discuss further aspects of this component.
(c) The *State Department of Education.* This body constitutes the professional, technical, and clerical staff of the Central Education Agency. *Id.* § 11.61 (West 1991).
(d) The *Commissioner of Education.* The Code assigns numerous executive duties to the Commissioner. They include the following: ·
(1) The general duty of executing the school laws and the rules and regulations promulgated by the State Board of Education. *Id.* § 11.-25(a) (West 1991).
(2) The power to interpret the rules and regulations of the State Board of Education, the Commissioner's interpretations being "binding for observance on all officers and teachers." *Id.* § 11.52(*l*) (West 1991).
(3) The performance of adjudicative functions, together with the State Board of Education, in deciding appeals from local school districts. *Id.* § 11.13(a), (b) (West 1991); *see also* § 21.207 (West 1987) (relating to appeals to the Commissioner under The Term Contract Renewal Act).
As an example of that part of school government allocated to local school districts, such as the Amarillo Independent School District involved in the present case, we may refer to chapter 23 of the Education Code. An independent school district is a "body corporate," governed by its board of trustees. It has, among others, the following powers and duties:
(a) The "exclusive power to manage and govern the public free schools of the district." Tex. Educ.Code Ann. § 23.26(b) (West 1987).
(b) The power to "adopt such rules, regulations, and by-laws as they may deem proper." *Id.* § 23.26(d).

(c) Such other powers and duties as may be granted or imposed by the Education Code or other provisions of law. *Id.* § 23.25.
(d) The power to contract with superintendents, principals, teachers, and other officers. *Id.* § 23.28(a).
(e) The power to require the teaching of courses in addition to those required by the Education Code. *Id.* § 21.101(e).
(f) The power to carry out all educational functions "not specifically delegated to the Central Education Agency." Tex.Educ.Code Ann. § 11.01 (West 1991). Thus, the Central Education Agency is a body exercising general control over specifically delegated functions while independent school districts exercise residual control over all other educational functions.

8. The "career ladder" scheme bears upon the present cause in another way as well. It affords a comparison between the legislature's choice to place administration of a statute in the hands of local school districts and its choice to place administration in the hands of state-level school officials.
The "career ladder" scheme provides for the augmentation of teacher pay according to the "step" of the "ladder" to which a teacher is assigned by the local school district, based upon performance evaluations. Tex.Educ.Code Ann. §§ 13.301–.323 (West Supp.1993). In contrast to the Act, which directs local school boards to provide the policies and procedures necessary for administration, sections 13.302 and 13.304 of the Code direct that the *State Board of Education* "adopt an appraisal process and criteria" to measure teacher performance and "develop or adopt and validate an assessment instrument" for appraising teacher performance in five categories specified by the legislature. *Id.* §§ 13.302(a), .302(d), .304. Local school districts may, if they so elect, employ the same evaluations for purposes of The Term Contract Nonrenewal Act. 19 Tex.Admin.Code § 149.-41(b) (1992).

§§ 13.301–.323 (West Supp.1993); 19 Tex.Admin.Code § 149.41(b) (1992). Exercising the right of election given it by the State Board of Education, AISD chose as a matter of policy to use the same evaluations for both purposes. *See* 19 Tex.Admin.Code § 149.71(c)(2), (3), (4) (1992). This choice necessitated a deadline after April 1. As a result, the written evaluations were not yet due and available, in the six cases involved in this appeal, for compliance with the Commissioner's "current year" theory. When confronted with AISD's rule-based discretionary choice, and its affect on compliance with the Commissioner's theory, the Commissioner merely remarked in his final order that the AISD was not *required* to use the same written evaluations. The district *could* have declined to employ the same written evaluations for administering the two statutory schemes; hence, by its own actions, AISD had simply "placed upon itself a burden that would keep the district from complying with the statutory dictates" of sections 21.202 and 21.204(a) as the Commissioner construed them. In other words, the Commissioner, in effect, nullified the school district's choice, made under a right of election given expressly by the State Board of Education in its formal rule.

For the foregoing reasons, we hold the Commissioner erred as a matter of law in the construction he placed upon the Act with regard to his policy of "current year" evaluations and exceeded his statutory authority by imposing that policy as a general requirement to be obeyed by local school districts in their administrations of the Act. *See* APTRA § 19(e)(1), (2). We therefore sustain AISD's first, second, and third points of error, and that part of the fourth point of error directed to the Commissioner's exceeding his authority.

*Abuse of Discretion.* We will assume, for purposes of the discussion only, that the Commissioner properly interpreted the Act and that he possessed the power to impose his "current year" policy on local school districts as a requirement of general applicability. Even so, he was prohibited to exercise his power in an arbitrary fashion, and we are obliged to set aside his order if it issued from an abuse of his discretion. *See* APTRA § 19(e)(6); Tex. Educ.Code Ann. § 11.13 (West 1991).

■ When an administrative agency implements new requirements of general applicability, it ordinarily does so through formal rule-making procedures such as those set out in APTRA §§ 4–10. This course assures fairness to affected persons because rule making operates prospectively from the effective date of the new rule. It also assures, by the notice-and-comment provisions of APTRA §§ 4–10, that the public and affected persons are heard on matters that involve their interests and affairs. This incidentally enables the agency to acquire the large view necessary to the adoption of requirements of general applicability such as standards of conduct and

The "Local Role"—the role of local school districts—is quite limited in the "career ladder" scheme. Such districts use "the appraisal process and performance criteria developed by" the State Board of Education, appraising teachers one or more times each year, depending on each teacher's status and performance as measured by "the most recent appraisal." Tex.Educ. Code Ann. § 13.303(c)(2) (West Supp.1993). The "career ladder" decisions of local school boards may be the subject of an administrative appeal to the Commissioner. *Id.* § 11.13 (West 1991).

Consistent with the legislature's decision to place administration of the "career ladder" scheme in state-level education officials, the State Board of Education has quite properly adopted formal rules regulating in detail the administration of that statutory scheme. Among other things, interestingly enough, the State Board of Education has by rule required that local school districts employ "current school year performance evaluations" in specified circumstances. 19 Tex.Admin.Code § 149.71(c)(2), (3), (4) (1992). This is, of course, the identical requirement that the Commissioner has attempted to place upon local school districts by means other than a formal rule—by his purported interpretation of the Act.

In contrast, however, the State Board of Education—the policy-making and rule-making component of the Central Education Agency—has *not* attempted to regulate in detail, by formal rule, the administration of the Act by local school districts. The State Board of Education has, by formal rule, regulated in detail administrative appeals to the Commissioner, his adjudicatory function being the sole function committed to a state-level school official under the Act. *See* 19 Tex.Admin.Code § 157.64 (1992).

administration. The legislature delegates rule-making power to an agency in the expectation that it *will* ordinarily employ that power to formulate and adopt requirements of general applicability; a presumption favors this course of proceeding. *See* 1 Frank E. Cooper, *State Administrative Law* 177–85 (1965).

■ Nevertheless, exceptional cases do arise in which the agency may justifiably choose, in its discretion, to formulate and enforce a general requirement through its decision in a particular case coming before the agency, in lieu of developing and adopting the requirement through formal rule making under APTRA §§ 4–10. This course may be justified, for example, when the agency is faced with construing a new rule or statute, or when it deals with a problem that requires *ad hoc* resolution simply because the problem cannot be captured within the bounds of a general rule. *See generally* 1 Cooper, *supra;* Ron Beal, Ad Hoc *Rulemaking: Texas Style,* 41 Baylor L.Rev. 101 (1989). The agency's discretionary choice to rely upon *ad hoc* enforcement of the general requirement is, however, subject to judicial review and revision. *See, e.g., Texas State Bd. of Pharmacy v. Seely,* 764 S.W.2d 806 (Tex.App.—Austin 1988, writ denied); *Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 745 S.W.2d 918 (Tex.App.—Austin 1988, writ denied); *Madden,* 663 S.W.2d 622.

■ In the present cause, we see nothing to negate the presumption in favor of the fairness and public participation that attend formal rule making under APTRA §§ 4–10. The issue was not a new one for the Commissioner; he had himself adopted contrary policies and requirements in the space of four years, first in *Barizon* then in *Kelly.* The issue did not present a problem impossible of capture within the boundaries of a general rule; the Commissioner

adopted and enforced a general rule by his "current year" policy.

On the other hand, the deleterious effects of an *ad hoc* enforcement of the general requirement were and are obvious. In the present cause, for example, AISD's reliance on the previous-year evaluations was permissible under *Barizon* at the time the district decided the six cases. The Commissioner's decision in *Kelly* intervened, and he applied it retroactively to reverse the AISD decisions when the six administrative appeals came before him. Since the State Board of Education, unlike a court, has

> the ability to make new law prospectively through the exercise of its rule-making powers, it has less reason to rely upon *ad hoc* adjudication to formulate new standards of conduct within the framework of [the pertinent legislation]. The function of filling in the interstices of the [legislation] should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future.

*Securities & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). Quite apart from the problem of retroactivity, however, the hundreds of school districts affected by the Commissioner's "current year" requirement and the public at large have been denied, without justification, the opportunity and benefits afforded by the notice-and-comment provisions of formal rule making under APTRA §§ 4–10.

We hold, as a result, that the Commissioner abused his discretion by choosing to enforce the "current year" requirement on an *ad hoc* basis rather than through formal rule promulgated by the State Board of Education.[9] The remaining part of AISD's fourth point of error directed to the Commissioner's abuse of discretion and AISD's points of error five through eight are sustained. We need not reach AISD's ninth

---

**9.** It should be recalled that we have only *assumed,* for purposes of discussion, that the Commissioner possessed the discretionary power of adopting and enforcing his "current year" requirement. As discussed earlier in this opin-ion, no such power has been delegated to him, and the legislature chose instead to place administration of the Act in the hands of local school authorities in matters of policy and procedure.

point of error because of our disposition of the preceding points of error.

For the reasons given, we reverse the Commissioner's final order and the trial-court judgment, remanding the cause to the trial court with instruction that it be remanded to the Commissioner for proceedings not inconsistent with our opinion.