John **SHARP,** Comptroller of Public Accounts; **Martha Whitehead,** Treasurer of Texas; and **Dan Morales,** Attorney General of Texas, Appellants,

v.

**CHEVRON CHEMICAL COMPANY,** Appellee.

No. 03–95–00628–CV.

Court of Appeals of Texas, Austin.

June 12, 1996.

Rehearing Overruled July 17, 1996.

Dan Morales, Attorney General and Thomas J. Meaney, Assistant Attorney General, Taxation Division, Austin, for appellants.

Ted Mishtal, Clark, Thomas & Winters, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

KIDD, Justice.

Appellee Chevron Chemical Company ("Chevron") filed suit against appellants[1] (collectively the "Comptroller") in district court seeking a refund of sales tax. *See* Tex. Tax Code Ann. §§ 151.001–.801 (West 1992 & Supp.1996) (hereinafter the "Code").[2] The disputed tax concerned Chevron's purchase of piping installed in the Polyethylene Manufacturing Unit at its Cedar Bayou chemical plant located outside of Baytown. The district court rendered judgment ordering the Comptroller to issue a $257,362.86 refund to Chevron. The Comptroller appeals. We will affirm the judgment of the district court.

## THE CONTROVERSY

Chevron is a major petrochemical company that manufactures polyethylene, a substance used in making various plastic products. In 1990, Chevron purchased extensive piping for use in the polyethylene manufacturing process at its Cedar Bayou plant. Chevron requested a refund from the Comptroller of the sales tax paid on its purchase of the piping. Chevron argued that the piping was exempt from sales tax because it is used in "actual manufacturing" operations. *See* Code § 151.318(g). The Comptroller denied

1. Appellants are John Sharp, Comptroller of Public Accounts; Martha Whitehead, Treasurer of Texas; and Dan Morales, Attorney General of Texas.

2. The dispute in this appeal concerns the 1990 tax year and is governed by the version of the Tax Code in effect at that time. Since the provisions of the Tax Code at issue have not changed, we cite the current code for convenience.

the request for a refund on the basis that the piping was used as "intraplant transportation equipment," which is not eligible for the "actual manufacturing" exemption. Code § 151.318(c)(2). Chevron filed suit for a refund under Code section 112.151. The district court rendered judgment for Chevron and the Comptroller appeals.

The record shows that the piping in question is an integral part of a sealed, synchronized, interconnected manufacturing process that continuously produces polyethylene pellets. The Polyethylene Unit at the Cedar Bayou plant contains a variety of piping, different in size, length, and function. The piping contains and funnels unreacted materials, removes heat from the reactor, recaptures and recycles gases, lubricates machinery, allows for insertion of various substances needed in the manufacturing process, prevents dangerous, wasteful or polluting conditions from forming, and performs other functions which are necessary and essential to the manufacturing of polyethylene.

The Code exempts certain manufacturing equipment from sales tax:

(g) Each person engaged in manufacturing, processing, fabricating, or repairing tangible personal property for ultimate sale is entitled to a refund or a reduction in the amount of tax imposed by this chapter as provided by Subsection (h) *for the purchase of machinery, equipment, and replacement parts or accessories with a useful life in excess of six months if the equipment is used or consumed in or during the actual manufacturing, processing, fabrication, or repair of tangible personal property for ultimate sale, and the use or consumption of the property is necessary or essential to the manufacturing, processing, fabrication, or repair operation, or to a pollution control process.*

Code § 151.318(g) (emphasis added).

The Comptroller concedes that the piping in question meets the requirements of the "actual manufacturing" exemption contained in section 151.318(g). The Comptroller, however, argues that the piping is excluded from the exemption under Code section 151.318(c)

because it is used for intraplant transportation. Section 151.318(c)(2) provides:

(c) The exemption does not include:

. . .

(2) *intraplant transportation equipment,* maintenance or janitorial supplies or equipment, or other machinery, equipment, materials, or supplies that are used incidentally in a manufacturing, processing, or fabrication operation.

Code § 151.318(c)(2) (emphasis added). Chevron responds that the piping is an integral component part of the machinery at the plant, all of which provides a unified, sealed environment that makes the formation of polyethylene pellets possible. We are asked to decide a narrow question: must the piping used in Chevron's manufacture of polyethylene be characterized as equipment dedicated to "intraplant transportation?"

## DISCUSSION

### *Jurisdictional Question*

In its first point of error, the Comptroller contends that the district court erred by considering a claim that was jurisdictionally barred because it was not alleged as a ground of error in Chevron's motion for rehearing challenging the agency's decision. *See* Code § 111.105(d). We find this argument to be without merit.

The Comptroller argues that the district court granted Chevron a refund on the basis that the piping was exempt from taxation as part of a pollution control system and contends that this specific ground of error was not raised in Chevron's motion for rehearing. The Code requires that Chevron prove that use of the piping is necessary or essential to the "manufacturing, processing, fabrication, or repair operation, *or to a pollution control process.*" Code § 151.318(g) (emphasis added). Clearly, proving that the piping is necessary and essential to a pollution control operation is only one of several ways to qualify for the exemption. The record shows that Chevron properly raised a specific ground of error in its motion for rehearing arguing that the piping is necessary or essential to the "manufacturing pro-

cess." Chevron was not also required to argue that the piping was necessary and essential to a "pollution control process." Furthermore, while the pollution control function of the piping may not have been specifically referred to as a "pollution control process," it is addressed generally in Chevron's motion for rehearing:

> The piping is a component part of Claimant's processing system that is vital not only to the actual functioning of the system but also to the very existence of the product: without the piping, Claimant's processing system could not function, and any attempt to make it function would result in the loss of all the raw materials in the manufacturing operation and *the contamination of both the product and the environment.*

(emphasis added). We overrule the Comptroller's first point of error.

### The Exemption

In its second point of error, the Comptroller contends that the district court improperly interpreted the exclusion in Code section 151.318(c)(2) by finding that the piping at issue was not used as intraplant transportation equipment. As a threshold matter, we address the burden of proof. We have recently considered the exemption in Code section 151.318(g). *See Sharp v. Tyler Pipe Indus., Inc.,* 919 S.W.2d 157, 161 (Tex.App.—Austin 1996, no writ h.). In *Tyler Pipe,* the taxpayer argued that its sand molds were used in the manufacture of pipe and therefore qualified for the exemption. The Comptroller disagreed, arguing that the sand molds were not used in actual manufacturing. *Id.* at 159. The Comptroller relied on well-settled Texas law requiring strict construction of tax exemptions and placing the burden on the taxpayer to show that it falls within the exemption. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.,* 804 S.W.2d 894, 899 (Tex.1991); *Quorum Sales, Inc. v. Sharp,* 910 S.W.2d 59, 61 (Tex.App.—Austin 1995, writ denied). We acknowledged that exemptions must be strictly, but reasonably, construed against the taxpayer. *Tyler Pipe,* 919 S.W.2d at 161. However, we held that the taxpayer had carried its burden to show that the sand

molds were used in actual manufacturing. *Id.* at 163.

■ In this appeal, we must go one step beyond *Tyler Pipe.* The Comptroller here concedes that Chevron's piping meets the requirements of the "actual manufacturing" exemption contained in section 151.318(g) but nevertheless argues that the piping is excluded from the exemption as "intraplant transportation equipment." As in *Tyler Pipe,* the Comptroller argues that the burden of proof is entirely on the taxpayer to show that it qualifies for any tax exemption sought. Chevron responds that this appeal is not governed by the rule of strict construction for exemptions because the Comptroller concedes here that the piping is necessary to actual manufacturing. Chevron reasons that the burden shifts to the Comptroller to prove that the piping is *excluded* from the exemption as intraplant transportation equipment under Code section 151.318(c)(2). We agree with Chevron.

■ Therefore, we consider whether the Comptroller has demonstrated that the piping is used as "intraplant transportation equipment." The statute does not define the term. The district court, however, made an unchallenged finding of fact that the Comptroller itself defines intraplant transportation equipment as any item that has *no other purpose* than use for intraplant transportation. Therefore, under the Comptroller's own definition, an item constitutes intraplant transportation equipment only if its *sole purpose* is for intraplant transportation. Because the Comptroller's definition is reasonable, we accept it. *See Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex. 1993).

■ Chevron offered evidence showing that the piping in question is used in many different steps within the manufacturing process, including, but not limited to, containing and funneling unreacted materials, removing heat from the reactor, recapturing and recycling gases, lubricating machinery, allowing for insertion of various substances needed in the manufacturing process, preventing dangerous, wasteful, or polluting conditions from forming, as well as performing other func-

tions which are necessary and essential to the manufacturing of polyethylene. This undisputed expert testimony clearly demonstrates that intraplant transportation is not the sole purpose of the piping.

The Comptroller analogizes the piping to a conveyor belt, which he has historically excluded from the exemption. The Comptroller reasons that the piping, like a conveyor belt, merely carries items from one place in a plant to another. We find the analogy unpersuasive. The record shows that the piping is part of a self-contained, unified manufacturing process, and is not merely a means for transporting material from one part of the plant to another. The piping does not just carry material from stage to stage within the manufacturing process, but rather forms one part of a large, integrated plant that is best characterized as a single "machine." We therefore hold that the district court did not err in determining that the piping was not "intraplant transportation equipment," and we overrule the Comptroller's second point of error.

### CONCLUSION

Because Chevron's piping is not used solely for intraplant transportation, it is not excluded from the sales-tax exemption in Code section 151.318(g). We therefore affirm the judgment of the district court granting Chevron a sales-tax refund.