TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00010-CV







Texas Citrus Exchange, a Texas Cooperative Association, Appellant




v.




John Sharp, Comptroller of Public Accounts of the State of Texas; and Dan Morales,


Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 93-14507, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING






 Texas Citrus Exchange sued the Comptroller for a refund of $49,593.26 in taxes paid on
electricity used in juice production. The Comptroller determined that electricity Texas Citrus used to keep
an ingredient frozen until it was used to make juice was used for "warehousing," a commercial use subject
to taxation under Texas Tax Code section 151.317 and Comptroller's rule 3.295. Texas Citrus claims that
maintaining frozen concentrate is part of its manufacturing process and thus the electricity is used for a
"noncommercial" purpose, exempt from taxation under the code and rule. The district court rendered
judgment for the Comptroller. In four points of error, Texas Citrus challenges the imposition of the tax
under the Tax Code and the Comptroller's rule. We will reverse the trial court's judgment and render
judgment that Texas Citrus receive the refund.


THE CONTROVERSY


 Texas Citrus is a cooperative marketing association of over 200 citrus farmers. In addition
to marketing the farmers' fresh fruit, the cooperative produces fruit juice at its factory in Mission, Texas. 
This all-natural juice does not contain preservatives and must adhere to strict quality standards regarding
acidity, sugar content, and other factors. Because fruit harvested in different seasons varies in acidity and
sugar content, the juices collected at different times of the year must be held for several months and then
blended to produce a uniform juice product. Texas Citrus extracts juice from the fruit and removes the
water to obtain a thick syrupy substance known as industrial concentrate. (1) Texas Citrus tests the industrial
concentrate for sugar-acid ratios and sends it to a tank farm or freezer rooms to be frozen. It takes
approximately seven days to freeze the concentrate. The tank farm maintains the concentrate at a
temperature of ten degrees Fahrenheit; the freezer rooms keep the concentrate at eight degrees below
zero. (2) The Comptroller agrees the electricity used to freeze the concentrate is exempt from taxation. The
parties disagree as to whether the electricity used to keep the industrial concentrate frozen until it is used
to make juice or sold as concentrate is taxable.

 Texas Citrus sells a small portion of the frozen industrial concentrate to other producers,
but most is used in the production of its own juice. In order to make the final product uniform, Texas Citrus
must blend industrial concentrate from several batches of fruit harvested at different times during the
season. (3) Once the blended concentrate matches the required characteristics, water is added and the
mixture is heated to produce the final juice product. The juice is then canned, labeled, and boxed for
shipment.

 Subchapter H of Chapter 151 sets out taxable items that are exempted from the sales,
excise, and use taxes imposed by the code. Tex. Tax Code Ann. § 151.301 (West 1992). Electricity is
exempt from these taxes except when it is employed for commercial use, which means "use by a person
engaged in selling, warehousing, or distributing a commodity or a professional or personal service . . . ." 
Id. § 151.317(a), (c)(2) (West 1992). Commercial use does not include "processing tangible personal
property for sale as tangible personal property . . . ." Id. 151.317(c)(2)(A)(i). According to the
Comptroller, Texas Citrus warehouses frozen concentrate for up to six months and the electricity required
to maintain the frozen concentrate is taxable. Texas Citrus insists that maintaining several batches of frozen
concentrate for blending into a uniform final product is part of its nontaxable manufacturing process.

 To aid in enforcing section 151.317, the Comptroller promulgated tax rule 3.295. See 34
Tex. Admin. Code § 3.295 (West 1988). (4) Under rule 3.295, the taxation of electricity is based on its
predominant use: If over fifty percent of the electricity measured on a single meter is used for taxable
purposes, all electricity is taxed; if over fifty percent is used for exempt purposes, all electricity is exempt. 
Id. § 3.295(d). During an audit of Texas Citrus for the period of April 1, 1987 to March 31, 1991, the
Comptroller determined that Texas Citrus's predominant use of electricity for the first two years of the
period was taxable. The Comptroller measured the electricity used to lower the temperature of the
concentrate to the desired temperature and considered that electricity to be exempt. Since the electricity
used in freezing made up less than fifty percent of Texas Citrus's total use of electricity, the Comptroller
concluded Texas Citrus's predominant use of electricity was taxable. Unhappy with these findings, Texas
Citrus initiated a second study for the same period. The supplemental study measured only the electricity
used to maintain the concentrate at the necessary temperature levels. Texas Citrus argued that this
maintenance electricity was also exempt, and if combined with the freezing electricity measured in the
original study, the predominant use of electricity for all four years would be exempt. The Comptroller
adhered to its position that the maintenance electricity was taxable and imposed a tax of $49,593.26 for
the predominantly commercial use of electricity in Texas Citrus's plant for the first two years. See Tex. Tax
Code Ann. §§ 151.101, 151.317 (West 1992). Texas Citrus paid the tax under protest and requested
a refund. See id. § 111.104. After the Comptroller denied its request, Texas Citrus brought suit in district
court. See id. § 112.151.

 The trial court held a bench trial to determine whether Texas Citrus was entitled to a refund. 
See id. § 112.054 (suit for tax refund is by trial de novo). For purposes of the suit, the Comptroller and
Texas Citrus stipulated that if the maintenance electricity is exempt the predominant use of electricity for
all four years is exempt from taxation. After hearing evidence detailing Texas Citrus's production process
and hearing argument regarding the parties' interpretations of the statute, the trial court concluded that
Texas Citrus was not entitled to the exemption. (5) In support of this conclusion, the trial court made Findings
of Fact 5 and 6: 


5. Texas Citrus is engaged in selling, warehousing, or distributing a commodity.


6. Maintaining industrial juice concentrate in a frozen state at a constant temperature is
not processing the concentrate.



The district court rendered judgment for the Comptroller, and this appeal ensued.


DISCUSSION

 In points of error one and two, Texas Citrus challenges the legal and factual sufficiency
of the evidence to support Findings of Fact 5 and 6. In points of error three and four, it contends the trial
court erred in concluding that the disputed electricity is not exempt and in rendering judgment for the
Comptroller. Because the parties stipulated that the character of the disputed electricity will determine
whether Texas Citrus is entitled to a refund, this appeal turns on the legal question whether Texas Citrus's
maintenance of industrial concentrate at a constant frozen temperature is warehousing or is part of the
manufacturing process.

 In addressing this issue, we may consider the purpose and intent of the law, giving due
deference to the interpretation placed upon the provision by the agency. See ADP Credit Corp. v.
Sharp, 921 S.W.2d 490, 493 (Tex. App.--Austin 1996, writ denied); Borden, Inc. v. Sharp, 888
S.W.2d 614, 620 (Tex. App.--Austin 1994, writ denied); Direlco, Inc. v. Bullock, 711 S.W.2d 360,
363 (Tex. App.--Austin 1986, writ ref'd n.r.e.). We give serious consideration to an agency's
construction of a statute that it is charged with enforcing, so long as the interpretation is reasonable and
does not contradict the plain language of the statute. Stanford v. Butler, 181 S.W.2d 269, 273 (Tex.
1944); Borden, Inc., 888 S.W.2d at 620; TEXALTEL v. Public Util. Comm'n, 798 S.W.2d 875, 884
(Tex. App.--Austin 1990, writ denied).

 Ordinarily, it is the taxpayer's burden to show it is entitled to an exemption. North Alamo
Water Supply Corp. v. Willacy County Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991); Sharp v.
Chevron Chem. Co., 924 S.W.2d 429, 432 (Tex. App.--Austin 1996, writ denied). However, when
the Comptroller relies on an exclusion from an exemption, this Court has held the burden shifts back to
the Comptroller to prove the use fits within the exclusion. Chevron Chem. Co., 924 S.W.2d at 432. 
In this case, the code exempts the purchase of electricity except when sold for commercial use. Tex. Tax.
Code Ann. § 151.317. Accordingly, we hold it was the Comptroller's burden to show the disputed
electricity was used for commercial purposes.

 The Comptroller argues that the exempt activity of "processing" must produce a change
in physical characteristics. An officer from the agency testified that the Comptroller has a policy of treating
electricity used in any action that does not produce a change in physical characteristics of the property as
a taxable use. The parties differ in their understanding of rule 3.295, which states that processing excludes
"any action taken to prolong the life of tangible personal property or to prevent a deterioration of the
tangible personal property being held for sale." See 34 Tex. Admin. Code 3.295(a)(7) (1988). Texas
Citrus says it holds the frozen concentrate not to prolong the life of property "held for sale" but rather to
maintain a key ingredient for a period of time necessary to its manufacturing process. It contends that,
under the rule, warehousing begins only after production is completed. The Comptroller says that
maintaining the concentrate in a frozen state prolongs its life so that it is excluded from processing under
the rule. It argues that the phrase "being held for sale" only modifies the prevention of deterioration, while
any action taken to prolong the life of property, whether or not it is being held for sale, is excluded.

 Texas Citrus notes that the Comptroller has changed its position over the previous three
audit periods: From 1979 to 1983, keeping the concentrate frozen was considered warehousing so the
electricity was taxable; from 1983 to 1987 maintaining the frozen concentrate was considered part of the
manufacturing process and the electricity was exempt; now the Comptroller reverts to the view that this
activity is warehousing and the electricity is taxable. Texas Citrus asks us to provide a consistent definition
of what use of electricity is taxable.

 The Tax Code evinces an unmistakable policy of exempting from taxation the purchase
and use of electricity in manufacturing products. In addition to section 151.317, section 151.318, entitled
"Property Used in Manufacturing," exempts


tangible personal property used or consumed in or during the actual manufacturing,
processing, or fabrication of tangible personal property for ultimate sale if the use or
consumption of the property is necessary or essential to the manufacturing, processing,
or fabrication operation.



Tex. Tax Code Ann. § 151.318(a)(2) (West 1992). Section 151.318 defines "manufacturing" as 


includ[ing] each operation beginning with the first stage in the production of tangible
personal property and ending with the completion of tangible personal property having the
physical properties (including packaging, if any) that it has when transferred by the
manufacturer to another.



Id. § 151.318(d). The Comptroller contends that section 151.318 does not involve electricity and is not
relevant to this dispute. However, Comptroller's rule 3.300 promulgated pursuant to this section exempts
"electricity . . . when used directly in manufacturing." 34 Tex. Admin. Code § 3.300(a)(9) (1988). Both
rules implementing sections 151.317 and 151.318 adopt the legislature's definition of manufacturing in
discussing electricity. See id. §§ 3.295, 3.300. We conclude these provisions and rules must be read
together. Statutory and rule provisions bearing on the same matters must be given a consistent and
harmonious meaning. Gulf States Utils. Co. v. Public Util. Comm'n, 784 S.W.2d 519, 524 (Tex.
App.--Austin 1990), aff'd, 809 S.W.2d 201 (Tex. 1991). We construe statutes as a whole rather than
through an examination of one isolated provision. ADP Credit Corp., 921 S.W.2d at 493; Estate of
Padilla v. Charter Oaks Fire Ins. Co., 843 S.W.2d 196, 198 (Tex. App.--Dallas 1992, writ denied).

 Valid rules promulgated by the Comptroller have the force and effect of legislation. Lewis
v. Jacksonville Bldg. & Loan Ass'n, 540 S.W.2d 307, 310 (Tex. 1976). Administrative rules are
ordinarily construed in the same manner as statutes. Id. Texas Citrus challenges the Comptroller's
application of rule 3.295 to its particular situation; it does not challenge the validity of the rule. An
agency's interpretation of its own rules is entitled to deference by the courts. Udall v. Tallman, 380 U.S.
1 (1965); Public Util. Comm'n v. Gulf States Utils. Co., 809 S.W.2d 201, 207 (Tex. 1991). Our
review is limited to determining whether the administrative interpretation "is plainly erroneous or
inconsistent with the regulation." Gulf States, 809 S.W.2d at 207 (quoting United States v. Larionoff,
431 U.S. 864, 872 (1977), and Bowles v. Seminole Rock Co., 325 U.S. 410, 414 (1945)). If the
Comptroller has failed to follow the clear, unambiguous language of its own regulation, we must reverse
its action as arbitrary and capricious. Id.; Sam Houston Elec. Coop., Inc. v. Public Util. Comm'n, 733
S.W.2d 905, 913 (Tex. App.--Austin 1987, writ denied).

 The legislature limits taxation of electricity to the commercial uses of "selling, warehousing,
or distributing a commodity." Rule 3.295 states that the use of electricity in manufacturing is a
noncommercial use, exempt from taxation. The rule defines manufacturing to include every operation from
the beginning of production until the product is completed and packaged for sale. Under this definition,
warehousing can occur only after a product is completed. The Comptroller's rule is consistent with the
statutory scheme; its application of the rule to Texas Citrus's use of electricity in producing juice is not.

 Texas Citrus's position is consistent with both the legislative scheme and uniform
application of rule 3.295. Under the scheme, warehousing means storage involved with the selling or
distributing of the final commercial product, not storage that occurs incidentally during production. Indeed,
rule 3.295 adds to the definition of manufacturing: "When production is completed, maintaining the life
of tangible personal property or preventing its deterioration is not a part of the manufacturing process." 
34 Tex. Admin. Code § 3.295(a)(7) (1988). Thus it is only electricity used to maintain or preserve
completed property ready for sale that constitutes a commercial use subject to taxation. Texas Citrus
uses electricity to keep its concentrate frozen during the middle of its process of converting fruit into all-natural juice that conforms to quality standards. The record contains an unchallenged finding of fact that
no final juice products are held in either the tank farm or the freezer rooms. The juice is not completed
and packaged until various batches of the concentrate are blended to achieve uniform ratios of sugar and
acidity and then mixed with water to form the final product. The Comptroller's unbending policy of
exempting as noncommercial only electricity used to change the physical characteristics of property does
not comport with its own rule or the statutory scheme. Manufacturing is a broader term that includes
processing; manufacturing need not always cause a change in the physical characteristics of the property. 
34 Tex. Admin. Code § 3.295(a)(3) (1988). Accordingly, Texas Citrus's position that it uses electricity
to keep the concentrate frozen as part of the manufacturing process is reasonable and consistent with the
rule and the statute; the Comptroller's insistence that this activity is warehousing contradicts the rule. 

 The fact that Texas Citrus sells some of the industrial concentrate does not change the
result. Texas Citrus is in the business of manufacturing all-natural juice, not of selling concentrate. The
majority of the concentrate is maintained in the tank farm and freezing rooms for the purpose of meeting
the quality standards of Texas Citrus's juice. The parties stipulated that small changes in the amount of
concentrate held in either the tank farm or freezer rooms do not significantly affect the amount of electricity
used to maintain the temperatures at the required levels. Because the electricity is the same and the
majority of it is used for an essential part of Texas Citrus's manufacturing process, we hold the electricity
is a noncommercial use exempt from taxation under the Tax Code.

 We reject the Comptroller's argument that the legislative acceptance doctrine requires us
to embrace its interpretation of its rule. This doctrine states that when an administrative agency construes
a statute in a new manner and the legislature re-enacts the statute without change, we should adopt the
agency's construction. Quorum Sales, Inc. v. Sharp, 910 S.W.2d 59, 64 (Tex. App.--Austin 1995,
writ denied). The doctrine has been applied to an agency's promulgated rules. See Central Power &
Light Co. v. Sharp, 919 S.W.2d 485, 489 (Tex. App.--Austin 1996, writ denied per curiam); Quorum
Sales, Inc., 910 S.W.2d at 64. This doctrine does not apply to the Comptroller's unwritten policy in
implementing one of its own rules, a policy on which the Comptroller has flip-flopped three times in
thirteen years. The Comptroller focuses on one provision of its rule to contradict the overall legislative
scheme of exempting from taxation electricity used in manufacturing. We do not defer to an administrative
construction that deviates from the clear and express provisions of a statutory scheme. Denton County
Elec. Cooperative, Inc. v. Public Util. Comm'n, 818 S.W.2d 490, 493 (Tex. App.--Texarkana 1991,
writ denied). Moreover, we give greater deference to an agency interpretation that is long-standing and
applied uniformly. Amarillo Indep. Sch. Dist. v. Meno, 854 S.W.2d 950, 954 n.6 (Tex. App.--Austin
1993, writ denied); see also Sharp v. House of Lloyd, Inc., 815 S.W.2d 245, 248 (Tex. 1991).

 We hold the Comptroller failed to meet its burden of showing the electricity Texas Citrus
uses to maintain industrial concentrate in a frozen state is excluded from the exempt use of manufacturing. 
We sustain the appellant's four points of error.


CONCLUSION

 We conclude that Texas Citrus is entitled to a refund of the taxes paid and reverse and
render judgment in its favor.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered

Filed: August 14, 1997

Publish
1.   During the audit period, Texas Citrus produced orange, grapefruit, apple, and pineapple juice. In
addition to using its own members' fruit to produce orange and grapefruit industrial concentrate, Texas
Citrus also purchases some orange and grapefruit industrial concentrate. The audit period reflects higher
than normal purchases of these concentrates due to a devastating freeze in 1981. Texas Citrus purchases
all of the apple and pineapple industrial concentrate used in production of those juices.
2.   Whether the concentrate is sent to the tank farm or a freezer room depends on its characteristics and
is not pertinent to this dispute.
3. Texas Citrus's senior vice president testified that just mixing concentrate from the beginning of the
season with concentrate from the end of the season will not produce the desired product. Rather, the
production of the desired product requires concentrate from fruit harvested at several different times of
year.
4. The parties stipulated that the 1987 and 1988 versions of the Comptroller's rules govern this case. 
The pertinent provisions of the two versions are identical; we cite to the 1988 version for convenience.
5. The trial court also concluded that rule 3.295(a)(7) is valid and consistent with the Tax Code. 
However, it is not the validity of the rule, but rather the Comptroller's interpretation of its rules, that is
challenged in this appeal.



 temperatures at the required levels. Because the electricity is the same and the
majority of it is used for an essential part of Texas Citrus's manufacturing process, we hold the electricity
is a noncommercial use exempt from taxation under the Tax Code.

 We reject the Comptroller's argument that the legislative acceptance doctrine requires us
to embrace its interpretation of its rule. This doctrine states that when an administrative agency construes
a statute in a new manner and the legislature re-enacts the statute without change, we should adopt the
agency's construction. Quorum Sales, Inc. v. Sharp, 910 S.W.2d 59, 64 (Tex. App.--Austin 1995,
writ denied). The doctrine has been applied to an agency's promulgated rules. See Central Power &
Light Co. v. Sharp, 919 S.W.2d 485, 489 (Tex. App.--Austin 1996, writ denied per curiam); Quorum
Sales, Inc., 910 S.W.2d at 64. This doctrine does not apply to the Comptroller's unwritten policy in
implementing one of its own rules, a policy on which the Comptroller has flip-flopped three times in
thirteen years. The Comptroller focuses on one provision of its rule to contradict the overall legislative
scheme of exempting from taxation electricity used in manufacturing. We do not defer to an administrative
construction that deviates from the clear and express provisions of a statutory scheme. Denton County
Elec. Cooperative, Inc. v. Public Util. Comm'n, 818 S.W.2d 490, 493 (Tex. App.--Texarkana 1991,
writ denied). Moreover, we give greater deference to an agency interpretation that is long-standing and
applied uniformly. Amarillo Indep. Sch. Dist. v. Meno, 854 S.W.2d 950, 954 n.6 (Tex. App.--Austin
1993, writ denied); see also Sharp v. House of Lloyd, Inc., 815 S.W.2d 245, 248 (Tex. 1991).

 We hold the Comptroller failed to meet its burden of showing the electricity Texas Citrus
uses to maintain industrial concentrate in a frozen state is excluded from the exempt use of manufacturing. 
We sustain the appellant's four points of error.


CONCLUSION

 We conclude that Texas Citrus is entitled to a refund of the taxes paid and reverse and
render judgment in its favor.



 

 Bea Ann Smith, Justice

Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Reversed and Rendered

Filed: August 14, 1997

Publish
1.   During the audit period, Texas Citrus produced orange, grapefruit, apple, and pineapple juice. In
addition to using its own members' fruit to produce orange and grapefruit industrial concentrate, Texas
Citrus also purchases some orange and grapefruit industrial concentrate. The audit period reflects higher
than normal purchases of these concentrates due to a devastating freeze in 1981. Texas Citrus purchases
all of the apple and pineapple industrial concentrate used in production of those juices.
2.   Whether the concentrate is sent to the tank farm or a freezer room depends on its characteristics and
is not pertinent to this dispute.
3. Texas Citrus's senior vice president testified that just mixing concentrate from the beginning of the
season with concentrate from the end of the season will not produce the desired product. Rather, the
production of the desired product requires concentrate from fruit harvested at several different times of
year.
4. The parties stipulated that the 1987 and 1988 versions of the Comptroller'