Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

AIDA T. LARA,
)
 No. 08-01-00503-CV

)


 Appellant,
)
 Appeal from

)
 

v.
)
 120th District Court

)


PACIFIC EMPLOYERS INSURANCE )
 of El Paso County, Texas

COMPANY,
)


 )
 (TC# 97-1231)

 Appellee.
)



MEMORANDUM OPINION



 Aida T. Lara filed suit in the district court appealing the determination by the Texas Workers'
Compensation Commission (the Commission) that she had an impairment rating of 9 percent. Based
on the jury's finding of a 9 percent impairment rating, the trial court entered a take nothing judgment
in favor of Pacific Employers Insurance Company. We affirm.

FACTUAL SUMMARY


 On April 19, 1995, forty-one-year-old Aida T. Lara, who was employed by Levi Strauss,
suffered an on-the-job injury as she pulled a cart weighing about thirty pounds. She had immediate
onset of pain in her neck, thoracic spine, and lumbar spine. She subsequently filed a claim for
workers' compensation benefits.

 Lara informed her examining physician that she had no prior back pain but medical records
showed that she had reported back pain to Dr. Jose Ruffier only two weeks before the work-related
injury. In fact, Dr. Ruffier had ordered an MRI of Lara's cervical spine which was performed on
March 27, 1995. It revealed narrowing of the intervertebral space at C5-6. Her physician diagnosed
her at that time with degenerative disc disease of the cervical spine with radiculitis. Shortly after her
injury, Lara was evaluated by Dr. Joseph Neustein who diagnosed cervical sprain, thoracic sprain,
and lumbosacral sprain. Lara underwent a spinal MRI on July 13, 1995 which indicated disc
herniation at C5-6 and L4-5. For several months, Lara's treatment consisted of heat, ultrasound,
electrical stimulation, and massage, but she reported no improvement. On October 27, 1995,
Dr. Neustein reported that Lara had reached maximum medical improvement and he determined that
her impairment rating was 31 percent. Dr. Neustein noted that some of Lara's impairment likely
preceded the work-related injury and the Commission should take that into account. 

 The Commission selected Dr. Rodney J. Simonsen to perform an independent medical
examination. Dr. Simonsen evaluated Lara on December 27, 1995 and January 31, 1996. Applying
the AMA Guides to the Evaluation of Permanent Impairment, Third Edition, Second Printing
(February 1989), Dr. Simonsen determined her impairment rating to be 9 percent. In his report,
Simonsen noted that Lara had demonstrated considerable theatrics and had magnified her symptoms,
particularly when he evaluated her range of motion. In Dr. Simonsen's opinion, Lara had bulging
but not herniated discs. It is unclear whether Dr. Neustein agreed or disagreed with Dr. Simonsen's
assessment of impairment rating. (1)

 Following an unsuccessful benefit review conference and contested case hearing, the hearing
officer found Lara's impairment rating to be 9 percent. Lara appealed her impairment rating to the
Commission appeals panel, which affirmed. Lara appealed this decision by filing a petition in the
district court. She alleged that her impairment rating should be 31 percent rather than 9 percent. At
trial, the jury viewed Dr. Simonsen's videotaped deposition, heard portions of Lara's deposition
testimony, and reviewed documentary evidence produced by both parties. Based upon this evidence,
the jury found that Lara's impairment rating to be 9 percent rather than 31 percent. Consequently,
the trial court entered a take-nothing judgment in favor of her employer's insurance carrier, Pacific
Employers Insurance Company (PEIC).

IMPAIRMENT RATING


 In her sole issue on appeal, Lara contends that her impairment rating should be 46 percent
as a matter of law. (2) Alternatively, she requests that judgment be rendered that her impairment rating
is 31 percent. (3) In making both arguments, Lara challenges Dr. Simonsen's determination of the
9 percent impairment rating. More specifically, she takes issue with Dr. Simonsen's consideration
of the McKenzie evaluation and Waddel testing and his alleged failure to apply the statutory
guidelines for assessing impairment rating. She also asserts that Dr. Simonsen was not authorized
to reinterpret the MRI films as there was no dispute as to whether Lara had disc herniations.

Standard of Review in the Trial Court



 The Texas Workers' Compensation Act mandates four levels of income benefits: (1)
temporary income benefits; (2) impairment income benefits; (3) supplemental income benefits; and
(4) lifetime income benefits. See generally Tex.Lab.Code Ann. §§ 408.081-408.162 (Vernon 1996
and Vernon Supp. 2003); see also Texas Workers' Compensation Commission v. Garcia, 893
S.W.2d 504, 513 (Tex. 1995). Temporary income benefits compensate for lost wages while an
injured employee is convalescing. Garcia, 893 S.W.2d at 513. They accrue when the employee
suffers a disability and continue until "maximum medical improvement." Garcia, 893 S.W.2d at
513; Tex.Lab.Code Ann. §§ 408.101, 408.102 (Vernon 1996). A claimant who is left with an
"impairment" after reaching maximum medical improvement becomes eligible for impairment
income benefits. Garcia, 893 S.W.2d at 513; Tex.Lab.Code Ann. §§ 408.121, 408.122 (Vernon
1996 and Vernon Supp. 2003). An impairment is defined as any anatomic or functional abnormality
or loss existing after maximum medical improvement that results from a compensable injury and is
reasonably presumed to be permanent. Tex.Lab.Code Ann. § 401.011(23)(Vernon Supp. 2003). 
The claimant's "impairment rating," which is the percentage of permanent impairment of the whole
body, is determined by a physician utilizing the American Medical Association's Guides to the
Evaluation of Permanent Impairment (the "Guides"). Garcia, 893 S.W.2d at 513-14;
Tex.Lab.Code Ann. §§ 401.011(24), 408.124 (Vernon Supp. 2003). An impairment determination
may be made by both the claimant's and the carrier's physician. See Garcia, 893 S.W.2d at 514. 
If an impairment rating is disputed, the claimant must be examined by a "designated doctor" selected
by the Commission. Tex.Lab.Code Ann. § 408.125. The designated doctor's rating has
presumptive weight and the Commission shall base the impairment rating on that report unless the
great weight of the other medical evidence is to the contrary. Tex.Lab.Code Ann. § 408.125. If
the great weight of the medical evidence contradicts the impairment rating contained in the report
of the designated doctor chosen by the Commission, the Commission shall adopt the impairment
rating of one of the other doctors. Id.

 There are two standards for judicial review, substantial evidence and modified de novo. 
Rodriguez v. Service Lloyds Insurance Company, 997 S.W.2d 248, 252-53 (Tex. 1999);
Tex.Lab.Code Ann. §§ 410.255, 410.301. As explained in Garcia, review under the latter standard
is not pure de novo because it is modified in the following respects: (1) the jury is informed of the
Commission's decision but it is not required to accord that decision any particular weight; (2)
evidence of the extent of impairment is limited to that presented to the Commission unless the court
determines that the claimant's condition has substantially changed; (4) and (3) the jury is required to
adopt the specific impairment rating arrived at by one of the physicians in the case. (5) Garcia, 893
S.W.2d at 528. Additionally, the trial is limited to those issues decided by the Commission appeals
panel and on which review is sought. Tex.Lab.Code Ann. § 410.302.

 If the dispute involves compensability or eligibility for or the amount of income or death
benefits, a district court reviews the Commission appeals panel decision under a modified de novo
standard. Rodriguez, 997 S.W.2d at 253; Garcia, 893 S.W.2d at 515. Because the impairment rating
impacts the amount of income benefits, Lara's judicial review of her impairment rating was
subjected to a modified de novo standard. See Rodriguez, 997 S.W.2d at 253. As the appealing
party, Lara had the burden of proof by a preponderance of the evidence. See Tex.Lab.Code Ann.
§ 410.303.

The Appellate Standard of Review


 When attacking the legal sufficiency of the evidence to support an adverse finding on an issue
for which it had the burden of proof, i.e., challenging the trial court's finding as a matter of law, the
appellant must demonstrate on appeal that the evidence conclusively established all the vital facts
in support of the issue. Sterner v. Marathon Oil Company, 767 S.W.2d 686, 690 (Tex. 1989); Elias
v. Mr. Yamaha, Inc., 33 S.W.3d 54, 59 (Tex.App.--El Paso 2000, no pet.). A party attempting to
overcome an adverse fact-finding as a matter of law must surmount two hurdles. Sterner, 767
S.W.2d at 690; Elias, 33 S.W.3d at 59. First, the record must be examined for evidence that supports
the finding, while ignoring all evidence to the contrary. Sterner, 767 S.W.2d at 690; Elias, 33
S.W.3d at 59. Second, if there is no evidence to support the finding, then the entire record must be
examined to see if the contrary proposition is established as a matter of law. Sterner, 767 S.W.2d
at 690; Elias, 33 S.W.3d at 59. Only if the contrary position is conclusively established will the
point of error be sustained. Elias, 33 S.W.3d at 59.

46 percent Impairment Rating


 Before beginning our review of the evidence, we must address Lara's argument that the
evidence established her impairment rating is 46 percent as a matter of law. Under the modified de
novo standard, the jury was correctly asked to choose between two impairment ratings, 9 percent and
31 percent. See Tex.Lab.Code Ann. § 410.306(c). It was not authorized to select a different
impairment rating, such as 46 percent or 43 percent, based on the evidence before it. See Garcia,
893 S.W.2d at 528 (noting that if three doctors testify, respectively opining that the claimant is 10,
14, and 20 percent impaired, the jury must return one of those three numbers as its verdict; it may
not consider the entirety of the testimony to find, for example, an impairment rating of 16 percent). 
Lara's contention that her impairment rating is 46 percent as a matter of law is therefore without
merit.

31 percent Impairment Rating


 In reviewing Lara's contention that her impairment rating is 31 percent as a matter of law,
we must first review the record to determine whether any evidence supports the jury's adverse
finding of a 9 percent impairment rating, while ignoring all evidence to the contrary. The jury had
before it Dr. Simonsen's videotaped deposition testimony and written reports in which he explained
the basis for the 9 percent impairment rating. Dr. Simonsen based his impairment ratings for the
cervical and lumbar spine according to the criteria of the AMA Guides to the Evaluation of
Permanent Impairment (Third Edition). With respect to the cervical spine, he determined that the
MRI films showed a bulging disc but not "frank herniation." His conclusion was buttressed by his
clinical findings. Thus, the Guides called for a 4 percent impairment rating. Dr. Simonsen found
that the range of motion measurements were invalid due to inconsistency and symptom
magnification, and consequently, he did not award any range of motion loss for the cervical spine. 
Due to Lara's abnormal MRI scan, he determined that her impairment rating was 4 percent. He
concluded that Lara's thoracic spine did not meet the Spine Specific Disorders and did not assess
a rating for it. He further found that her range of motion could not be adequately evaluated and gave
zero percent for thoracic range of motion impairment. In Dr. Simonsen's opinion, Lara's
lumbosacral spine met the criteria for a "II-B" lumbar spine specific disorder which awards a
5 percent impairment rating. Once again, however, he determined that Lara's range of motion
measurements were invalid due to inconsistency. As stated in the Appeal Commission's panel
decision, which the jury had in evidence before it, it was permissible for Dr. Simonsen to invalidate
the range of motion measurements based upon inconsistencies found during the exam as well as what
he termed Lara's symptom magnification and theatrics. (6) All of this evidence supports the 9 percent
impairment rating found by the jury.

Lara's Challenge to Dr. Simonsen's Testimony


 Lara acknowledges Dr. Simonsen's testimony and the written evidence, but challenges his
conclusion. She vigorously argues that although Dr. Simonsen initially applied the AMA Guides
to the Evaluation of Permanent Impairment (Third Edition, Second Printing), he improperly
disregarded the prior MRI findings and invalidated the range of motion findings through the use of
other tests not authorized by the AMA Guides as well as his own subjective opinion. We understand
her to challenge the reliability of his expert opinion in the context of this legal sufficiency challenge. 
 In Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706 (Tex. 1997), the Supreme
Court held that the legal sufficiency of expert testimony to support a finding can be reviewed by
examining the reliability of the expert's data and methodology using the Robinson factors for the
admissibility of that same testimony. Havner, 953 S.W.2d at 713-14; E.I. du Pont de Nemours &
Co. v. Robinson, 923 S.W.2d 549 (Tex. 1995)(adopting the holding setting forth the standards of the
admissibility of expert testimony in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 590, 113
S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)). To preserve a complaint that scientific evidence is
unreliable, and thus no evidence, a party must object to the evidence before trial or when the
evidence is offered. Melendez v. Exxon Corporation, 998 S.W.2d 266, 282 (Tex.App.--Houston
[14th Dist.] 1999, no pet.), citing Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 409 (Tex.
1998). Because Lara did not raise any of these objections at trial, her complaints regarding the
reliability of Dr. Simonsen's expert opinion will not render the evidence insufficient to support the
9 percent impairment rating. Even if Lara had preserved her complaints, they are without merit for
the reasons stated below.

Invalidation of ROM Findings


 Lara generally asserts that Dr. Simonsen had no authority to invalidate the range of motion
findings based upon his conclusion that she was magnifying her symptoms. In her view,
Dr. Simonsen was restricted to performing the measurements required by the AMA Guide (Third
Edition) and could not invalidate them even if he concluded that Lara had intentionally restricted her
ROM. As already noted in this opinion, the Workers' Compensation Commission Appeals Panel
has repeatedly held that an evaluating physician is permitted to invalidate ROM findings based upon
the doctor's observation and clinical experience. Nothing in the AMA Guide (Third Edition)
requires the type of mechanistic approach advocated by Lara and we decline to read it into the AMA
Guide (Third Edition).


The Herniated Discs Issue


 In his assessment, Dr. Simonsen found that Lara had bulging, but not herniated discs in her
cervical and lumbar spine. This resulted in an award of 4 percent and 5 percent impairment,
respectively, rather than awards of 6 percent and 7 percent. Lara complains that Dr. Simonsen was
not authorized to disregard the prior MRI findings that Lara had herniated discs in her cervical and
lumbar spines because neither party had disputed that diagnosis. Lara cites no authority in support
of this position. Section 1.2 of the AMA Guides to the Evaluation of Permanent Impairment (Third
Edition) requires the evaluating physician to analyze the history and course of the medical condition,
beginning with the circumstances of onset, and including findings on previous examinations, the
course of treatment, responses to treatment, and the impact of the medical condition on life activities. 
Therefore, the AMA Guides supports Dr. Simonsen's evaluation of Lara's injury. Further, the
existence of a herniated disc is an integral part of an impairment rating. Therefore, it was
appropriate for Dr. Simonsen to consider the nature and extent of Lara's injury in making his
impairment rating assessment.

The McKenzie Evaluation and Waddel Testing


 Lara also takes issue with Dr. Simonsen's utilization of the McKenzie evaluation and Waddel
testing during his examination. She maintains that only the AMA Guides may be considered in
making an impairment rating. Dr. Simonsen explained that with the McKenzie evaluation, he asks
the patient to perform repeated movements in order to assess what effect the different movements
have on the patient's pain level and other symptoms. Once he determines which movements
aggravate the symptoms, he prescribes different movements and exercises designed to eliminate the
symptoms. For example, a patient with a herniated disc in the lumbar spine frequently feels
increased pain if she repeatedly bends forward. If she bends backward, however, the pain will often
centralize in the lumbar spine or disappear completely. Dr. Simonsen explained that because people
bend forward some 200 to 400 times every day, and often never bend backward, constant pressure
on the front of the disc can eventually cause it to bulge. Performing the opposite movement may
relieve the patient's pain. Dr. Simonsen believed the McKenzie system is more sensitive than motor
and sensory testing. Although Dr. Simonsen determined that Lara's pain was made significantly
worse during flexion movements, and he criticized her prior therapy for including flexion
movements, there is no evidence that he used the McKenzie system rather than the tests prescribed
by the AMA Guides in determining her impairment rating. Further, the AMA Guides contemplate
that the evaluating physician will assess the patient's condition, course of treatment and response to
treatment.

 Dr. Simonsen explained that Waddel testing is named after an English orthopaedic surgeon,
Gordon Waddel. It is one method of determining whether a patient is giving truthful responses. The
examining physician uses light touch and then asks the patient for a reaction. For example, the
examiner might place the weight of his hands on the patient's shoulders. If the patient were to state
that it caused terrible pain, the examiner might suspect that the patient was not being honest. With
respect to Lara, light touch caused severe pain in the neck and lower back. When Dr. Simonsen
merely placed his hands on Lara's shoulders, she complained of severe pain in the lower back. 
Additionally, he placed his hands on Lara's hips and rotated her a few degrees to the right and then
the left. The movement should not cause any pain in the spine because the examiner is rotating the
upper body as a unit and there is no rotation of the spine. When Lara complained of horrible pain
in the spine, he formed the opinion that she was not being truthful. Because it is appropriate for an
examining physician to invalidate range of motion measurements if he concludes that a patient is
magnifying her symptoms, Dr. Simonsen's use of Waddel testing to assist him in assessing the
truthfulness of Lara's responses is proper.

CONCLUSION


 The record before us reflects that the 9 percent impairment rating is supported by some
evidence. Consequently, Lara's sufficiency challenge fails. Her sole issue on appeal is overruled and
the judgment of the trial court is affirmed.


July 3, 2003 
 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.
1. Lara's counsel informed Dr. Neustein of Dr. Simonsen's impairment ratings for the cervical and lumbar spine
at 4 percent and 5 percent, respectively, and asked him whether he agreed or disagreed with them. In the same paragraph
of the letter, counsel also asked Dr. Neustein whether he agreed that the impairment ratings should be 6 percent and
7 percent based upon the AMA Guides. In his reply letter, Dr. Neustein stated simply that he agreed but did not indicate
whether his agreement was with Dr. Simonsen's impairment ratings or with the impairment ratings suggested by counsel.
2. In her original brief, Lara asserted that her impairment rating should be 54 percent as a matter of law. 
However, she modified the proposed figure to 46 percent in her reply brief. At oral argument, Lara's counsel
alternatively suggested an impairment rating of 43 percent. Given that the prayer in Lara's reply brief requests reversal
and a rendition of a 46 percent impairment rating, we will restrict our analysis to her contention that her impairment
rating should be 46 percent as a matter of law.
3. In stating her argument in the reply brief, Lara argues that the 31 percent impairment rating is "more credible"
than the 9 percent impairment rating. Because she requests rendition of judgment for either a 46 percent or 31 percent
impairment rating, we are restricting our review to legal sufficiency. To the extent Lara may have intended to raise a
factual sufficiency challenge in the reply brief by stating that the 31 percent impairment rating is "more credible," it will
not be addressed as Lara did not raise this issue in her original brief. See Smith v. Hues, 540 S.W.2d 485, 489
(Tex.Civ.App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.). The Texas Rules of Appellate Procedure do not allow an
appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not
raised by appellant's original brief. Tex.R.App.P. 38.3; see also Anderson Producing Inc. v. Koch Oil Co., 929 S.W.2d
416, 424 (Tex. 1996)(holding that issue of disqualification of counsel "not properly raised" where only reference to the
issue was in reply brief); Barrios v. State, 27 S.W.3d 313, 322 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).
4. Tex.Lab.Code Ann. §§ 410.306(c), 410.307.
5. Tex.Lab.Code Ann. § 410.306(c).
6. The Appeals Panel Decision, admitted as Defendant's Exhibit 6, stated as follows: 


 The claimant contends that her IR should be greater than nine percent and states that Dr. [Simonsen]
should not have invalidated cervical and lumbar ROM testing. In Texas Workers' Compensation
Commission Appeal No. 960311, decided March 27, 1996, we stated that 'a doctor may through
observation and his clinical experience determine either a normal ROM, or that measured limitations
are invalid.' In Texas Workers' Compensation Commission Appeal No. 960868, decided June 20,
1996, we stated that 'a doctor can invalidate even otherwise valid [ROM] measurements based upon
clinical evaluation'; and in Texas Workers' Compensation Commission Appeal No. 960034, decided
February 5, 1996, we held that a designated doctor had a proper basis for discounting the ROM
measurements where those measurements were significantly inconsistent with the doctor's
observations of the claimant's motions.