Rosa RODRIGUEZ, Petitioner,

v.

SERVICE LLOYDS INSURANCE COMPANY, Respondent.

No. 98–0006.

Supreme Court of Texas.

Argued Nov. 17, 1998.

Decided July 1, 1999.

Rehearing Overruled Sept. 9, 1999.

[redacted]

Caldwell Fletcher, Houston, for Petitioner.

Evelyn T. Ailts, Todd Lonergan, Dean G. Pappas, Houston, for Respondent.

Justice BAKER delivered the opinion of the Court, in which Justice ENOCH, Justice OWEN, Justice ABBOTT, and Justice GONZALES joined.

In this workers' compensation case we consider: (1) whether Texas Workers' Compensation Commission Rule 130.5(e), the "90–day Rule," is subject to any exceptions; and (2) the proper standard of judicial review for an injured worker's appeal of her impairment rating's finality under Rule 130.5(e). Rule 130.5(e) provides, "The first impairment rating assigned to an employee is considered final if the rating is not disputed within 90 days after the rating is assigned." 28 TEX. ADMIN. CODE § 130.5(e). Both the trial court and the court of appeals dismissed Rosa Rodriguez's case, holding that the substantial evidence rule governs review of an impairment rating's finality under Rule 130.5(e) and that Rodriguez did not state a claim capable of review under that standard. We conclude that: (1) the correct standard of review is modified de novo; and (2) Rule 130.5(e) does not allow for exceptions, an issue neither the trial court nor the court of appeals reached because they applied a different standard of review. Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

## I. FACTS

Rosa Rodriguez injured her back at work on July 20, 1993, and filed a workers' compensation claim. Three months later, her treating chiropractor certified that

Rodriguez had reached maximum medical improvement and assigned her a four-percent impairment rating. The record is unclear about when the Commission notified Rodriguez of her impairment rating or when Ro briguez objected to it. Rodriguez, who neither speaks nor reads English, asserts that she had difficulty communicating with the Commission and understanding the significance of her assigned impairment rating.

Rodriguez asked for the Commission's permission to change treating doctors on January 31, 1994. The Commission approved her request. She then saw another chiropractor who recommended that she see a medical specialist, which she did. The orthopedic surgeon who next examined and tested Rodriguez's back, concluded that she needed surgery for "a severely ruptured disc with nerve root impingement." Rodriguez sought a second opinion from another doctor who, after examining Rodriguez, concluded that surgery was not necessary. When Rodriguez continued to experience back pain, she returned to the orthopedic surgeon, who found that her symptoms had worsened and again recommended surgery.

Based on these opinions, Rodriguez then returned to the Commission to change her initial assigned impairment rating. At a contested case hearing held on October 31, 1994, the various doctors who had examined her presented their conflicting opinion testimony. The hearing officer found against Rodriguez. The officer concluded that Rodriguez had not disputed her impairment rating within ninety days of its assignment, and, therefore, it had become final under the 90–day Rule. See 28 TEX. ADMIN. CODE § 130.5(e). The hearing officer also found that no exception to the 90–day rule applied because: (1) there was no compelling medical evidence to show that the chiropractor misdiagnosed Rodriguez; and (2) there was insufficient evidence to establish that the original assessment was incorrect due to a significant error or misdiagnosis. Rodriguez appealed that decision to the Commission appeals panel, which affirmed.

Rodriguez next appealed to the district court. She alleged, among other things, that the appeals panel erred in affirming the hearing officer's conclusions about the impairment rating's finality because they were not supported by the evidence. She also alleged that the impairment rating was invalid because she had experienced a substantial change of condition. Rodriguez argued that the district court should review the Commission's findings under a de novo standard. Service Lloyds Insurance Company, her employer's insurance carrier, specially excepted, contending that Rodriguez's pleadings were defective. The district court sustained the special exceptions and ordered Rodriguez to replead and seek only relief reviewable under the substantial evidence rule.

Rodriguez amended her petition by adding the substantial evidence standard as an alternative standard, but did not delete her other claims. Upon Lloyds' motion, the district court struck Rodriguez's pleadings and dismissed her cause of action for not repleading according to its order and for not filing the Commission record for review. The court of appeals affirmed, agreeing that substantial evidence was the appropriate standard for judicial review. 961 S.W.2d 318.

## II. STANDARD OF REVIEW

■ In 1989, the Legislature completely revised the Texas workers' compensation system. See Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504, 510 (Tex.1995). It restructured the administrative process as well as judicial review of Commission decisions under that process. See TEX. LAB.CODE §§ 401.001–506.001 (The Texas Workers' Compensation Act). Under the former system, courts reviewed final Commission decisions under a single de novo standard. See Garcia, 893 S.W.2d at 512. The 1989 legislation replaced that standard for judicial review with two different standards, sub-

stantial evidence and modified de novo. *See* TEX. LAB.CODE §§ 410.255, 410.301; *Garcia*, 893 S.W.2d at 515. Under the current Act, the nature of the dispute determines the judicial remedy that applies.

■ If the dispute involves compensability or eligibility for or the amount of income or death benefits, a district court reviews the Commission appeals panel decision under a modified de novo standard. *See* TEX. LAB.CODE § 410.301; *see also Garcia*, 893 S.W.2d at 515. The employee's county of residence usually determines which district court hears the appeal. *See* TEX. LAB.CODE § 410.252. If the dispute concerns something other than compensability or eligibility for or the amount of income or death benefits, a party must appeal the final decision, if it is appealable at all, to the district court in Travis County under the Administrative Procedure Act for a substantial evidence review. *See* TEX. LAB.CODE § 410.255; *see also* TEX. GOV'T CODE §§ 2001.171–.178 (the Administrative Procedure Act).

Rodriguez argues that the modified de novo standard applies here because her impairment rating challenge necessarily affects her entitlement to income benefits. Rodriguez further contends that the court of appeals erred in dismissing her claim because her pleadings adequately stated a claim under this standard. Lloyds responds that the substantial evidence rule applies because the issue of the impairment rating's finality under Rule 130.5(e) is a procedural issue that does not directly touch on the substantive issue of benefits. The court of appeals agreed with Lloyds. It held that Rodriguez's challenge of her impairment rating's finality was reviewable under the substantial evidence rule because such a claim did not "concern compensability, her eligibility for benefits or the amount of income or death benefits." 961 S.W.2d at 321. We disagree. An impairment rating's finality directly affects eligibility for and the amount of benefits due to the employee.

■ An employee receives impairment income benefits according to the employee's impairment rating, which is the percentage of the whole body's permanent impairment. *See* TEX. LAB. CODE §§ 401.011(24), 408.124. To determine the impairment rating, an examining doctor evaluates the permanent effect of the employee's injury under statutory guidelines. *See* TEX. LAB.CODE § 408.124. The doctor expresses the rating as a percentage of permanent impairment to the whole body. *See* TEX. LAB.CODE §§ 401.011(24), 408.124. The greater this percentage, the greater the amount the employee receives as impairment income benefits. *See Garcia*, 893 S.W.2d at 514. The impairment rating may also qualify an employee for supplemental income benefits, which provide long-term disability compensation. *See* TEX. LAB.CODE § 408.142; *see also Garcia*, 893 S.W.2d at 514.

■ A doctor will not certify an impairment rating until the employee reaches "maximum medical improvement," the point at which the employee's injury will not materially improve with additional rest or treatment. *See* TEX. LAB.CODE § 408.121. The date of maximum medical improvement is fixed when an examining doctor certifies that no further material recovery or lasting improvement can reasonably be anticipated. *See* TEX. LAB.CODE §§ 401.011(30), 408.123. The Act presumes that maximum medical improvement will be reached not later than two years after income benefits begin to accrue. *See* TEX. LAB.CODE § 401.011(30).

■ Until an employee reaches maximum medical improvement, he or she may receive temporary income benefits. *See* TEX. LAB.CODE §§ 408.101–.102. These benefits are paid weekly to compensate for lost wages during the employee's convalescence. *See Garcia*, 893 S.W.2d at 513. Once an employee reaches maximum medical improvement, temporary income benefits end. *See* TEX. LAB.CODE §§ 408.101(a), 408.102(a). Whether the injured employee receives any additional income benefits de-

pends largely on the assigned impairment rating. *See* TEX. LAB.CODE §§ 408.121(a), 408.142.

Any dispute that challenges an impairment rating's finality necessarily implicates the date of maximum medical improvement and the amount paid as temporary income benefits. This dispute may also impact the employee's eligibility for, and the calculation of, impairment income benefits and supplemental income benefits. Disputes about an injured employee's impairment rating are, therefore, disputes about benefits. Because the modified de novo standard of review applies to these types of benefit disputes, that standard also applies to impairment rating disputes, including disputes that challenge an impairment rating's finality. Accordingly, the court of appeals erred in holding that substantial evidence review applies to this finality issue.

### III. THE 90–DAY RULE

Rodriguez contends that we should reverse the court of appeals' judgment because, under modified de novo review, she is entitled to plead exceptions to the 90–day Rule, including substantial change of condition, and because she disputed her impairment rating within ninety days. Lloyds responds that even under a modified de novo review, Rodriguez cannot plead an exception to avoid the 90–day Rule because the Rule itself does not provide for exceptions and the exceptions created by the Commission are invalid. We agree that the 90–day Rule does not include exceptions, but we conclude that Rodriguez is entitled to seek judicial review of whether she disputed the impairment rating within ninety days.

■ We construe administrative rules, which have the same force as statutes, in the same manner as statutes. *See Lewis v. Jacksonville Bldg. & Loan Ass'n,* 540 S.W.2d 307, 310 (Tex.1976). Unless the rule is ambiguous, we follow the rule's clear language. *See Republicbank Dallas,*

*N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985). In construing a Commission rule, our primary objective is to give effect to the Commission's intent. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 438 (Tex.1997).

■ The plain language of the 90–day Rule does not contain exceptions. *See* 28 TEX. ADMIN. CODE § 130.5(e). The Rule's language is consistent with the Commission's intent. Our best source of the Commission's intent is the Texas Register, which contains notice of Rule 130.5(e) when proposed, the Commission's explanation of the rule, and the Commission's responses to public comment it received about the Rule. *See* TEX. GOV'T CODE §§ 2001.023–.030. In the Register, the Commission states its intent "that an impairment rating is final if not disputed by either party within 90 days after the rating is assigned." 16 Tex. Reg. 177 (1991). The Commission also answers a criticism that the 90–day rule would "preclude the revisiting of the [impairment rating] issue." 16 Tex. Reg. 177 (1991). The Commission responds that "allowing the impairment rating to be revisited would only allow a doctor to assign an inappropriate impairment rating to begin with, which should be discouraged." 16 Tex. Reg. 177 (1991). Thus, based on the Commission's intent and the Rule's clear language, we conclude that Rule 130.5(e) has no exceptions and that an impairment rating is final if not disputed within ninety days.

■ In interpreting this rule, however, the Commission appeals panels have created exceptions. One exception allows the Commission to recalculate an impairment rating after the ninety-day period has expired if the claimant shows a "substantial change of condition." Other exceptions include "significant error" and "clear misdiagnosis." While we defer to the Commission's interpretation of its own regulation, we cannot defer to an administrative interpretation that is "plainly erro-

neous or inconsistent with the regulation." *Public Util. Comm'n of Tex. v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex.1991). If the Commission does not follow the clear, unambiguous language of its own regulation, we reverse its action as arbitrary and capricious. *See Gulf States*, 809 S.W.2d at 207. Consequently, given the language and intent of the 90–day Rule, we cannot recognize the exceptions to the 90–day Rule that Rodriguez pleads, including substantial change of condition.

■■■■ A presumption favors adopting rules of general applicability through the formal rulemaking procedures as opposed to administrative adjudication. *See Amarillo Indep. Sch. Dist. v. Meno*, 854 S.W.2d 950, 958 (Tex.App.—Austin 1993, writ denied). Allowing an agency to create broad amendments to its rules through administrative adjudication rather than through its rulemaking authority undercuts the Administrative Procedure Act (APA). *See* TEX. GOV'T CODE §§ 2001.001–.038. The APA details the procedure that a state agency must follow when adopting rules. *See* TEX. GOV'T CODE §§ 2001.001–.038. When an agency subject to the APA, such as the Workers' Compensation Commission, adopts new rules, it ordinarily does so through the APA's rulemaking procedures. *See Meno*, 854 S.W.2d at 957. Under these procedures the agency must provide notice, publication, and invite public comment, among other things. *See* TEX. GOV'T CODE §§ 2001.023–.030. In this way, the APA assures that the public and affected persons are heard on matters that affect them and receive notice of new rules. *See Meno*, 854 S.W.2d at 957. Indeed, the Legislature delegates formal rulemaking power to an agency in the expectation that an agency will ordinarily adopt rules of general application through that power. *See Meno*, 854 S.W.2d at 958; *see also R.R. Comm'n of Tex. v. Lone Star Gas Co.*, 844 S.W.2d 679, 689 (Tex. 1992).

■■■■ In exceptional cases, an agency may choose to formulate and enforce a general requirement through a decision in a particular case. *See Lone Star Gas*, 844 S.W.2d at 689; *Meno*, 854 S.W.2d at 958. An agency may do this when using the rulemaking procedure would frustrate the effective accomplishment of the agency's functions. *See Lone Star Gas*, 844 S.W.2d at 689. Adjudicative rulemaking may be appropriate, for example, when the agency is construing a new rule or when a dispute deals with a problem that requires ad hoc resolution because the issue cannot be captured within the bounds of a general rule. *See Meno*, 854 S.W.2d at 958. The agency's discretionary choice to rely on adjudication is subject to judicial review and revision. *See Meno*, 854 S.W.2d at 958.

Here, we see no reason to overturn the presumption favoring the fairness and public participation that accompany formal rulemaking under the APA. *See Meno*, 854 S.W.2d at 958. The 90–day Rule certainly is not new. *See* 16 Tex. Reg. 178 (Rule 130.5 adopted effective January 25, 1991). In addition, the Commission could have easily formulated exceptions in the language of a general rule. In fact, the Commission appeals panels formulated their exceptions in the language of a general rule, identifying the exceptions as "substantial change of condition," "significant error," and "clear misdiagnosis."

■■■■ The Legislature enacted the APA to avoid the very problem these broad ad hoc exceptions create. *See Meno*, 854 S.W.2d at 957–58. We are unable to ascertain whether all Commission appeals panels or contested case hearing officers recognize these exceptions or are obligated to apply them consistently in all cases. And reading the Commission's rules would not give an employee or insurance carrier notice of these exceptions to the 90–day Rule because the exceptions are not found in the printed rules. *See* 28 TEX. ADMIN. CODE § 130.5(e). Indeed, informally amending this rule through a contested case hearing or an appeals panel decision results in the "issuance of a pri-

vate opinion that will never be known by anyone except those few persons who take the time to research the files of an agency." Beal, *Ad Hoc Rulemaking: Texas Style*, 41 BAYLOR L. REV. 101, 120 (1989). If the Commission seeks to amend the 90–day Rule, then it can do so under the procedures set out in the APA. *See* TEX. GOV'T CODE §§ 2001.001–.038. Therefore, we do not recognize the ad hoc exceptions to the 90–day Rule that Rodriguez argues, including substantial change of condition.

■ Rodriguez also argues that, even without the benefit of exceptions, her pleadings still adequately state a claim under the modified de novo standard. In her second amended petition, Rodriguez alleges that she had no actual knowledge of the initial impairment rating when it was assigned and that her objection to it was within the ninety days as the Rule requires. This challenge presents a viable issue for judicial review. *See* TEX. LAB. CODE § 410.302 (limiting trial to issues previously decided and challenged before appeals panel). Accordingly, we remand this issue to the district court for determination under modified de novo review.

## IV. SUBSTANTIAL CHANGE OF CONDITION

■ Rodriguez's pleadings also allege that her original impairment rating was erroneous because after it was assigned there had been a substantial change in her medical condition. Rodriguez argues that she was entitled to an evidentiary hearing on her substantial change of condition in the district court under section 410.307(a) of the Labor Code. *See* TEX. LAB.CODE § 410.307(a). We recently considered section 410.307 in *Lumbermens Mutual Cas. Co. v. Manasco*, 971 S.W.2d 60 (Tex.1998). There we held that section 410.307 was merely a rule of evidence that applied only in properly perfected district court appeals of impairment ratings. *See Manasco*, 971 S.W.2d at 64. We rejected any notion that this section created an independent, sub-

stantive right to reopen the impairment issue after the claimant had failed to timely appeal. *See Manasco*, 971 S.W.2d at 64.

Lloyds argues that *Manasco* is virtually identical to the present cause and should control our decision here. Lloyds argues that, like Manasco, Rodriguez seeks to use section 410.307 to avoid the consequences of not exhausting her administrative remedies. We do not agree that Rodriguez failed to exhaust her administrative remedies as Manasco did. In *Manasco*, a hearing officer determined Manasco's impairment rating at a contested case hearing. Manasco did not pursue an administrative appeal, but appealed directly to the district court. *See* TEX. LAB.CODE § 410.169. We held that Manasco did not exhaust his administrative remedies. *See Manasco*, 971 S.W.2d at 64. Rodriguez, on the other hand, completed the administrative process by appealing the contested case hearing order on her impairment rating's finality to the appeals panel and then to district court. Thus, unlike Manasco, Rodriguez exhausted her administrative remedies.

■ Nevertheless, Rodriguez is not entitled to use section 410.307 to plead substantial change of condition. Again, section 410.307 is a rule of evidence that applies to modified de novo judicial review; it is not an independent cause of action. *See Manasco*, 971 S.W.2d at 64. In the district court, extent of impairment evidence is limited to evidence that was presented to the Commission, "[e]xcept as provided in Section 410.307." TEX. LAB. CODE § 410.306. Under section 410.307, if the court, after a hearing, finds a substantial change of condition, then extent of impairment evidence is not limited to that presented to the Commission. *See* TEX. LAB.CODE § 410.307. Thus, section 410.307 is not an exception to the 90–day Rule, as Rodriguez argues.

We conclude that Rodriguez is entitled to challenge only whether she disputed her impairment rating within ninety days. If the trial court finds that she disputed her

impairment rating within ninety days, then Rodriguez is entitled to a contested case hearing to determine a new impairment rating. If Rodriguez then properly appeals the contested case order to the appeals panel and then to district court, she may be entitled to present substantial change of condition evidence. *See* Tex. Lab.Code § 410.307.

## V. CONCLUSION.

In summary, we conclude that while Rodriguez may not plead an exception to Rule 130.5(e), she is entitled to judicial review about whether she disputed her impairment rating within ninety days. We further conclude that the finality of an impairment rating under Rule 130.5(e) is a matter concerning income benefits to the employee and is thus reviewable under the Texas Workers' Compensation Act's modified de novo review. We reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

Chief Justice PHILLIPS filed a concurring opinion, in which Justice HECHT, Justice HANKINSON, and Justice O'NEILL joined.

Chief Justice PHILLIPS, joined by Justice HECHT, Justice HANKINSON and Justice O'NEILL concurring.

I concur in the Court's decision to remand, but I disagree with the scope of that remand. I do not agree with the Court that Rule 130.5(e) invariably forbids any challenge to the first assigned impairment rating after the 90–day period provided in the rule. Although the rule "considers" an impairment rating final absent a timely dispute, it does not define that type of finality or otherwise explain the consequences of an untimely dispute. Because the rule's meaning is unclear, I would adopt the Commission's administratively developed construction to permit chal-

lenges after 90 days in limited circumstances.

Rule 130.5(e) provides:

The first impairment rating assigned to an employee is *considered* final if the rating is not disputed within 90 days after the rating is assigned.

28 Tex. Admin. Code § 130.5(e)(emphasis supplied). Under the Court's view, that a doctor may have grossly erred when determining the employee's impairment rating or that the Act would permit the employee a longer period to discover and contest this error, for example, is inconsequential. This application may be harsh, but to the Court "considered final" means absolutely final.

I disagree. We should not presume that "considered" is mere surplusage. The proper presumption is that every word in a statute or rule was deliberately chosen for a meaning and a purpose. *Jessen Assocs., Inc. v. Bullock*, 531 S.W.2d 593, 600 (Tex. 1975). As we said in *Perkins v. State*, 367 S.W.2d 140, 146 (Tex.1963), "a cardinal rule of statutory construction is that each sentence, clause and word is to be given effect if reasonable and possible."

Moreover, when interpreting an administrative rule, we must consider the rule's administrative construction. *See* Tex. Gov't Code § 311.023(6)("The Code Construction Act"). The Commission's interpretation of its own rule is entitled to deference by the courts so long as it is reasonable. *See Public Util. Comm'n v. Gulf States Util. Co.*, 809 S.W.2d 201, 207 (Tex.1991).

To assist us in this regard, the Commission has filed two amicus curiae briefs, explaining its application of Rule 130.5(e). The Commission advises that "considered final" cannot be equated with "absolutely final." Instead, the Commission applies the rule according to the facts in each case. In this case, the Commission submits that Rodriguez had the right to avoid finality under the rule if she could prove by a preponderance of the evidence that either:

"(1) there was a valid dispute [communicated to the Commission] within ninety-days from the date she received notice of her first assigned impairment rating; and/or (2) the first assigned impairment rating was invalid because it was based on a misdiagnosis or was due to a significant error." Thus, the consideration of finality under Rule 130.5 is, under the Commission's interpretation, subject to challenge both procedurally and substantively.

This Court recognizes that "finality" under the rule may be attacked procedurally, but it rejects any notion that "finality" may also be challenged substantively. This conclusion, the Court says, is required by both the "clear" language of the rule and the Commission's original intent, which the Court divines from a Commission statement published in the Texas Register eight years ago.

Prior to adopting its rules, the Commission published a draft for public comment. *See* 15 Tex. Reg. 6464 (1990). One critic complained that the 90–day rule was "unnecessary and would preclude the revisiting of the issue [of an employee's impairment rating]." 16 Tex. Reg. 177 (1991). The Commission disagreed, and explained its view in the Texas Register. Here is the Commission's complete response:

> The commission disagrees because allowing the impairment rating to be revisited would only allow a doctor to assign an inappropriate impairment rating to begin with, which should be discouraged. Additionally, after the 104–week MMI [maximum medical improvement] threshold has been reached, MMI cannot be revisited.

16 Tex. Reg. 177 (1991). What does this mean? Clearly, the Commission thought the 90–day rule was needed to encourage doctors to use care in assigning impairment ratings, but its view regarding the preclusive effect of its rule is not so apparent. If the rule was intended to preclude any reconsideration of the assigned impairment rating after 90 days, why did the Commission immediately reference the two year period permitted under the Labor Code for determining an employee's MMI, or maximum medical improvement? Because an injured employee's impairment rating cannot be determined until that employee reaches maximum medical improvement, *see* Tex. Lab.Code §§ 408.121 & .123, reference to this longer period suggests that the 90–day period is not absolute. Furthermore, if MMI can be revisited up to 104 weeks after income benefits begin to accrue (as the Commission's comment suggests), is it not reasonable to infer that an impairment rating (premised on an earlier, erroneous determination that the employee had reached maximum medical improvement) can also be reexamined?

Rather than this cryptic comment, I would rely on the Commission's established practice under the rule after years of practical experience. That practice, as explained in the Commission's amicus briefs, would permit a substantive challenge to the employee's impairment rating (and MMI) after the 90–day period under limited circumstances. Applying that construction to this case, I would remand to the trial court both Rodriguez' procedural claim that her objection to the assigned impairment rating was timely, and her substantive claim that, notwithstanding any procedural error, her assigned impairment rating of four percent was the product of misdiagnosis or other significant medical error. Not only does this construction properly defer to the Commission's established construction of its own rule, it also is supported by the liberal construction we apply to "workers' compensation legislation to carry out its evident purpose of compensating injured workers and their dependents." *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999).