**Reversed and Remanded and Opinion filed July 12, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-01000-CV

### MARY CATHERINE LEVANDOVSKY, Appellant

### V.

### TARGA RESOURCES INC. AND TARGA DOWNSTREAM LLC, Appellee

**On Appeal from the 344th District Court
Chambers County, Texas
Trial Court Cause No. CV26087**

## O P I N I O N

In this summary-judgment appeal, appellant Mary Catherine Levandovsky contends that the trial court erred in declaring a family cemetery located on property owned by Targa Resources Inc. and Targa Downstream LLC (collectively, "Targa") "abandoned" and granting summary judgment in favor of Targa. We reverse and remand.

## BACKGROUND

This appeal involves a small family cemetery located on slightly more than one acre tract of land within the perimeter of Targa's 200-plus acre Mont Belvieu gas-processing facility in Chambers County, Texas. Targa's predecessor in interest, Warren Petroleum, acquired the acreage containing the cemetery tract from Edgar C. Fisher on August 16, 1955. The deed from Fisher to Warren included a reservation of the surface estate of the approximately one acre cemetery, referred to as the Ben Fisher Cemetery.[1] This reservation explicitly stated that Warren, the grantee, would own fee simple title to the property, but it was not permitted to use the surface estate of the Ben Fisher Cemetery as long as the land was used as a cemetery. The graves of Edgar Fisher, his mother, his brother, and his daughter are located in the cemetery. The oldest grave in the cemetery dates from 1898, and the most recent burial occurred in 1976. The cemetery is surrounded by a fence, headstones are clearly visible, and the area within is maintained by Targa. *See* Appendix.[2]

In December 2010, Targa brought a declaratory judgment action seeking removal of the dedication for cemetery purposes and permitting exhumation and transfer of the human remains to a perpetual-care cemetery. Prior to filing suit, Targa discovered that appellant was the granddaughter of Edgar Fisher. When she was notified of the proceeding, she opposed relocation of the graves. Targa also notified the Texas Historical Commission, which declined to intervene in the matter in the trial court.[3]

In August 2011, Targa filed a motion for summary judgment, requesting the relief described above. In support of its request, Targa asserted that, in relevant part, the

---

[1] The deed contains a metes and bounds description of the cemetery tract and states: "This deed includes said cemetery tract, with the exception that Grantee shall not have the right to use the surface of said cemetery tract for any purpose so long as it is used as a cemetery."

[2] These photographs were attached to Targa's summary-judgment motion.

[3] However, on appeal, the Texas Historical Commission, through the Office of the Attorney General, has filed an amicus brief supporting appellant's position.

cemetery is abandoned, and it is in the public interest to remove the dedication for cemetery purposes and relocate any buried remains to a perpetual care cemetery. Targa further alleged that, prior to filing the suit, none of the grave sites had been visited by family members for at least thirty-five years. It alleged that it and its predecessor, Warren, had provided "minimal maintenance" to the grave sites for more than fifty-five years, including mowing the grass in the tract to prevent the accumulation of long grasses. Targa asserted that it was dangerous for people to visit the cemetery due to the risks associated with a large gas processing facility, citing a prior fire at an adjacent facility. It argued that public interests would be better served by exhumation of the bodies from the graves and removal to a perpetual care cemetery where the public would have safer access to the graves.

Appellant responded, denying that the cemetery had been abandoned and asserting that Targa had failed to establish that relocation of the graves was in the best interest of the public. She attached her own affidavit to the response, stating that she is the granddaughter of Edgar Fisher and became aware of the cemetery only after she was contacted by a Targa representative. She stated that she had visited the cemetery on September 16, 2011 and had researched her family history. She explained that the cemetery is an important location for both "personal and general historical reasons." She further stated that she intended to visit the cemetery in the future, that the safety requirements associated with a visit to the cemetery, including wearing appropriate safety gear and watching a safety video, did not "bother" her, and that she was not concerned about her safety when visiting the cemetery. She expressed willingness to execute a waiver of liability. Finally, she stated that she intended to replace or repair the damaged headstones and markers and would "gladly see to the maintenance of the cemetery" if permitted by Targa.

Also attached to the response was the affidavit of Catherine Levandovsky, appellant's daughter and the great-granddaughter of Edgar Fisher. Catherine averred that she became aware of the cemetery during the pendency of the suit and has visited it three

3

times.  She explained that she discovered many details regarding her family history, including that her family was one of the founding families in Chambers County.  Like her mother, Catherine stated that she planned to visit the cemetery in the future and was willing to execute a waiver of liability.  She further explained as follows:

> While I understand there are inherent risks to visiting the cemetery I am not concerned about my safety.  As stated above I will follow all instructions and safety precautions as instructed by Targa employees and included in the safety video.  I am a Department of the Army employee and work on an Army installation.  The need to follow rules and procedures when it comes to safety and security are very important and familiar to me.

The trial court heard Targa's summary-judgment motion on October 4, 2011.  It subsequently granted the following declaratory relief:

> Any dedication, implied easement or designation for cemetery purposes that affects the real property described below and recorded at Vol. 168, Page 369 of the Real Property Records of Chambers County, Texas (the "Real Property), has been abandoned, and therefore is of no further effect or a burden on the Real Property. . . .
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that Targa may forthwith remove any human remains from said Real Property to a perpetual care cemetery, at Targa's sole cost and expense.  Also at Targa's sole cost and expense, Targa shall do the following in connection with the relocation of the graves and any bodily remains located in the Real Property to a perpetual care cemetery:  (a) it shall engage the perpetual care cemetery funeral director to relocate the graves and any human remains located in the Real Property to the perpetual care cemetery, to maintain and perform all required record keeping, and to secure any required permits in the performance of such tasks, and henceforth to care for the graves in accordance with the rules and standards of the perpetual care cemetery; (b) it shall also direct that the perpetual care cemetery follow all laws and regulations with respect to the proper reinternment [sic] and care of the graves; (c) it shall advise Mary Catherine Levandosky [sic] of the new location of the graves; (d) it shall engage a religious official to oversee the dis-internment [sic] and the reinternment [sic] of the graves and remains from the Real Property to the perpetual care cemetery; and (e) it shall engage a person qualified in the repair of gravestones to make repairs to the gravestones in a manner that is in accordance with normal maintenance of gravestones at the perpetual care cemetery.

This appeal timely followed the trial court's declaratory judgment.

## ANALYSIS

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference, and we resolve any doubts in the nonmovant's favor. *Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 549 (Tex. 1985). In a traditional motion for summary judgment, if the movant's motion and summary judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). This burden shifts, however, only when the movant establishes its right to judgment as a matter of law. *See id.*

In her first issue, appellant asserts that the trial court erred in determining that the Ben Fisher Cemetery had been abandoned. The Texas Health & Safety Code provides that the owner of a property on which an "abandoned" cemetery is located may petition a district court in the county in which the cemetery is located for removal of any dedication for cemetery purposes that affects the property if the court finds that the removal of the dedication is in the public interest. Tex. Health & Safety Code § 711.010(b). "If a court orders the removal of a dedication of a cemetery and all human remains on the property have not previously been removed, the court shall order the removal of the human remains from the cemetery to a perpetual care cemetery." *Id.* The Texas Historical Commission (the "Commission") may adopt rules to enforce and administer section 711.010 of the Texas Health & Safety Code. *Id.* at 711.012(c)(1).

Administrative rules have the same force and effect as statutes. *Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). They should be construed in the same manner as statutes. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). Unless the rule is ambiguous, the court should follow the rule's clear

language. *Rodriguez*, 997 S.W.2d at 254. In construing an administrative rule, the primary objective is to give effect to the agency's intent. *Id.* To discern that intent, we begin with the plain language of the rule. *See TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439.

Apparently unbeknownst to the parties in this case, the Commission adopted a definition of an "abandoned cemetery" in May 2010, prior to the filing of this suit. 13 Tex. Admin. Code § 22.1. The Commission defines an "abandoned cemetery" as follows: "a non-perpetual care cemetery containing one or more graves and possessing cemetery elements for which no cemetery organization exists *and* which is not otherwise maintained by any caretakers. It may or may not be recorded in deed records of the county in which it lies." *Id.* § 22.1(1) (emphasis added).

The trial court erred by failing to consider the Commission's definition of an abandoned cemetery. As defined by the Commission, a non-perpetual care cemetery is abandoned if it: (1) contains one or more graves; (2) has cemetery elements for which no cemetery organization exists; *and* (3) is not otherwise maintained by *any* caretakers. *Id.* The Ben Fisher Cemetery meets the first and second but not the third prong of the Commission's definition of an abandoned cemetery. Under the facts of this case, including photographs[4] of the cemetery, it appears that the Ben Fisher Cemetery has been maintained, even though it has been maintained by Targa, the party seeking a declaration that it has been abandoned.

In sum, the Ben Fisher Cemetery does not meet the definition of an "abandoned cemetery" as established by the Commission because it is "otherwise maintained by [a] caretaker."[5] *Id.* Accordingly, the trial court erred in declaring the Ben Fisher Cemetery abandoned. We sustain appellant's first issue.

---

[4] See Appendix

[5] *Cf. Andrus v. Remmert*, 136 Tex. 179, 146 S.W.2d 728, 730 (Tex. 1941) ("As long as land once dedicated to use as a cemetery is kept and preserved as a resting place for the dead, with anything to

## CONCLUSION

Having sustained appellant's first issue, we reverse and remand to the trial court for proceedings consistent with this opinion.[6]


      /s/     Adele Hedges
               Chief Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown.

---

indicate the existence of graves, or as long as it is known and recognized by the public as a graveyard, it is not abandoned." (internal quotations omitted)), *modified*, 136 Tex. 185, 149 S.W.2d 584 (1941). The parties rely on case law in their briefs because, as noted above, none of them appears to have been aware of the Commission's definition of an abandoned cemetery. Although none of the cases cited by the parties explicitly defines an "abandoned cemetery," the Commission's definition is consistent with the common law. *See id.*

[6] Because of our disposition this issue, we need not reach appellant's second issue.

# APPENDIX





8