# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00815-CV

**Don Ross Malone, Appellant**

**v.**

**Public Utility Commission of Texas; Electric TransmissionTexas, LLC; and
W.T. Waggoner Estate, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-GN-11-001268, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In a contested case, the Public Utility Commission of Texas issued a final order amending Electric Transmission Texas, LLC's (ETT) certificate of convenience and necessity to allow construction of an electric transmission line, a segment of which would cross the property of appellant Don Ross Malone.  Malone sued for judicial review of the order in district court.  In two issues on appeal, Malone contends that the district court erred in affirming the Commission's order.  We will affirm the judgment of the district court.

## BACKGROUND

ETT is an electric utility subject to the Public Utility Regulatory Act (PURA) and regulation by the Commission.  *See* Tex. Util. Code §§ 31.002(6) (defining "electric utility" as person who "owns or operates for compensation in this state equipment or facilities to produce, generate, transmit, distribute, sell, or furnish electricity in this state"), 32.001 (Commission

jurisdiction over electric utilities). As part of the Commission's plans for developing and transmitting electric output from renewable energy technologies in Texas, the Commission called for the construction of a transmission line across north central Texas, a segment of which is referred to as the Riley-to-Edith Clark (REC) line.[1] *See* 16 Tex. Admin. Code § 25.174(a) (5), (c)(1) (Public Util. Comm'n of Tex., Competitive Renewable Energy Zones).[2] The Commission selected ETT as the entity responsible for constructing the REC line, and accordingly, in 2010 ETT filed an application with the Commission to amend its certificate of convenience and necessity (CCN).[3] *See id.* § 25.174(d)(1).

ETT included multiple transmission line routing options in its CCN application–ETT's preferred route and thirteen alternative routes. One of the alternative routing options proposed by

---

[1] In 2005, the Legislature statutorily established the goal of increasing electrical generating capacity from renewable energy technologies in Texas. *See* Act of July 14, 2005, 79th Leg., 1st C.S., ch. 1, §§1-4, 2005 Tex. Gen. Laws 1 (codified at Tex. Util. Code §§ 36.053(d), 39.203(e), 39.904(a), (g)-(n)). In furtherance of this goal, the legislature has required the Commission to designate "competitive renewable energy zones" (CREZs) throughout the State "in areas in which renewable energy resources and suitable land areas are sufficient to develop generating capacity from renewable energy technologies." Tex. Util. Code § 39.904(g)(1). The Commission must also develop a plan to construct transmission capacity necessary to deliver the electric output from renewable energy technologies in those zones, "in a manner that is most beneficial and cost-effective to the customers." *Id.* § 39.904(g)(2). Pursuant to this mandate, in 2008, the Commission adopted a plan that identified the construction of the REC line. *See* Tex. Pub. Util. Comm'n, *Commission Staff's Petition for Designation of Competitive Renewable-Energy Zones*, Docket No. 33672 (Oct. 7, 2008) (order on rehearing).

[2] Because there have been no material intervening substantive changes in the statutes or rules since the administrative proceedings at issue in this case, all references to the statutes and rules will be to the current version.

[3] Tex. Pub. Util. Comm'n, *Remand of Docket No. 35665 (Commission Staff's Petition for Selection of Entities Responsible for Transmission Improvements Necessary to Deliver Renewable Energy from Competitive Renewable-Energy Zones)*, Docket No. 37902 (Mar. 30, 2010) (order on remand).

ETT, referred to as REC1, would cross property owned by Malone. Upon receiving notice of ETT's application, Malone and several other affected landowners intervened and became parties to the proceeding. The Commission subsequently assigned the hearing on ETT's application to the State Office of Administrative Hearings.

At the administrative hearing that followed, the only contested issue was the location of the proposed REC line. Two administrative law judges (ALJs) received evidence and heard testimony, including testimony concerning the impact of the various routes on the affected landowners, and then issued a proposal for decision. The ALJs' proposal for decision focused on six of the proposed routes for the REC transmission line, including REC1, and included findings of facts specific to each of the routes. In their proposal for decision, the ALJs also cautioned the Commission as follows:

> [T]he evidence indicates that the paralleling and crossing of two or more CREZ transmission lines present significant reliability concerns and should be avoided where possible. This case will be decided before a decision is rendered in the ETT CREZ case in SOAH Docket No. 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, PUC Docket No. 38743. In that docket, the Commission will need to consider the outcome of this proceeding if it wishes to avoid crossings of 345-kV CREZ transmission lines.

Ultimately, the ALJs recommended that the Commission approve ETT's application and concluded that ETT's preferred route, referred to as REC12, best satisfied the criteria set forth in PURA and the Commission's rules. Among other things, the ALJs found that:

77. All fourteen routes proposed for the REC segment of ETT's application are viable, feasible, and acceptable from environmental, engineering, and cost perspectives.

3

. . .

93. Although all of the routes proposed in the application are viable and compliant with applicable routing criteria, REC Segment Route 12 is the best alternative weighing the factors set forth in PURA § 37.056(c) and [rule] 25.101(b)(3)(B).

Upon considering the ALJs' proposal for decision, the Commission approved ETT's application but modified the recommendation with respect to the routing of the REC segment. Instead of utilizing ETT's preferred route, the Commission utilized a modified version of the REC1 route. Malone sought judicial review of the Commission's decision. *See* Tex. Util. Code § 15.001 (providing that "any party to a proceeding before the commission is entitled to judicial review under the substantial evidence rule").

After the district court affirmed the Commission's order, Malone filed this appeal. Asserting two issues, Malone complains that (1) the Commission improperly rejected the ALJs' recommendation with respect to the routing of the REC segment and (2) the Commission erred by selecting a route based solely out of concern for a single landowner.

**STANDARD OF REVIEW**

Our review of the Commission's final order is governed by the "substantial evidence" standard of the Texas Administrative Procedure Act (APA). *See id*. Under this standard, a court reviewing an agency action shall reverse or remand a case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are

(A)     in violation of a constitutional or statutory provision;

(B)     in excess of the agency's statutory authority;

4

(C)     made through unlawful procedure;

(D)     affected by other error of law;

(E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code § 2001.174(2).

However, as a reviewing court, we may not substitute our judgment for that of the agency on the weight of the evidence on matters committed to agency discretion. *Id*. § 2001.174(1); *City of El Paso v. Public Util. Comm'n*, 344 S.W.3d 609, 618 (Tex. App.—Austin 2011, no pet.). Instead, we must uphold the Commission's finding even if the evidence actually preponderates against it, so long as enough evidence suggests the Commission's determination was within the bounds of reasonableness. *Southwestern Pub. Serv. Co. v. Public Util. Comm'n*, 962 S.W.2d 207, 215 (Tex. App.—Austin 1998, pet. denied). We will consider a decision of the Commission to be arbitrary and capricious or an abuse of discretion if the agency reaches a completely unreasonable result after weighing the relevant factors established by the legislature. *See Dunn v. Public Util. Comm'n*, 246 S.W.3d 788, 791 (Tex. App.—Austin 2008, no pet.).

**DISCUSSION**

*Statutory Requirements for Transmission Lines*

Under Section 37.051 of PURA, an electric utility must obtain a certificate of convenience and necessity before installing, operating, or extending a transmission line. Tex. Util.

Code § 37.051.  To obtain this certificate, or to amend a previously obtained certificate, a utility must submit an application to the Commission.  *Id*. § 37.053.  The CCN application is subject to the contested-case-hearing process, and any "person or electric cooperative interested in the application may intervene" in the proceedings.  *Id*. § 37.054; *see* 16 Tex. Admin. Code §§ 22.201-.207 (Pub. Util. Comm'n of Tex., Hearings).

Section 37.056 of PURA sets out certain factors the Commission must consider in determining whether to grant a CCN application.[4]  Tex. Util. Code § 37.056(a).  Ultimately, the

---

[4]  Section 37.056 of PURA provides:

The Commission shall grant each certificate on a nondiscriminatory basis after considering:

(1) the adequacy of existing service;
(2) the need for additional services;
(3) the effect of granting the certificate on the recipient of the certificate and any electric utility serving the proximate area; and
(4) other factors, such as:

(A) community values;
(B) recreational and park areas;
(C) historical and aesthetic values;
(D) environmental integrity; and
(E) the probable improvement of service or lowering of cost to consumers in the areas if the certificate is granted; and
(F) to the extent applicable, the effect of granting the certificate on the ability of this state to meet the goal established by Section 39.904(a) of this title.

Tex. Util. Code § 37.056(c).  "These factors are stated in the broadest possible terms and are intended as legislative standards to guide the Commission and its administration of the certification process." *Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 722-23 (Tex. App.—Austin 2004, pet. denied). When, as in this case, the Commission considers an application for a certificate of public convenience and necessity for a transmission project intended to serve a competitive renewable energy zone, the Commission is not required to consider (1) the adequacy of existing service or (2) the need for additional services. *See* Tex. Util. Code § 39.904(h).

Commission may approve the CCN application only if, upon considering the appropriate factors, it determines that the proposed CCN is "necessary for the service, accommodation, convenience, or safety of the public." *See id*.; *see also* 16 Tex. Admin. Code § 25.101(b) (Public Util. Comm'n of Tex., Certification Criteria).

If the Commission grants a CCN application, it must also approve a route for the transmission lines that meets the requirements of PURA and Commission rules. *See id*. § 25.101(b)(3)(B). The Commission has, through its adoption of administrative rules, identified several additional factors that the Commission is to consider in deciding CCN applications with respect to the routing of transmission lines. *Id*. Specifically, Commission rule 25.101 provides that in determining the location of transmission lines, the Commission is to adopt a line route that, to the extent reasonable, moderates the impact on the affected community and landowners, unless grid reliability and security dictate otherwise. *Id*. When considering the utility's proposed routes, the Commission must also consider:

> (i) whether the routes utilize existing compatible rights-of-way, including the use of vacant positions on existing multiple-circuit transmission lines;
>
> (ii) whether the routes parallel existing compatible rights-of-way;
>
> (iii) whether the routes parallel property lines or other natural or cultural features; and
>
> (iv) whether the routes conform with the policy of prudent avoidance.

*Id*. § 25.101(b)(3)(B). With this statutory and regulatory framework in mind, we turn to Malone's issues on appeal.

7

### Modifications to the Commission's Order

First, we consider Malone's assertion that the Commission improperly rejected the ALJs' recommendation with respect to the routing of the REC segment. Specifically, Malone contends that the Commission failed to comply with section 2003.049(h) of the Texas Government Code when it modified the ALJs' proposal for decision because it failed to explain its reasons for the modification. *See* Tex. Gov't Code § 2001.174(2)(C).

Section 2003.049 authorizes the Commission to change an ALJ's findings of fact and conclusions of law or to modify an order issued by an ALJ if the Commission:

> (1) determines that the [ALJ]:
>
>   (A) did not properly apply or interpret applicable law, commission rules or policies, or prior administrative decisions;
>
>   (B) issued a finding of fact that is not supported by a preponderance of the evidence; or
>
> (2) determines that a commission policy or a prior administrative decision on which the administrative law judge relied is incorrect or should be changed.

*Id*. § 2003.049(g). Thus, unlike the general APA rules governing agency modifications, the Commission may substitute its judgment for that of the ALJ on questions of fact. *Southwestern Pub. Serv. Co.*, 962 S.W.2d at 213-14; *cf.* Tex. Gov't Code § 2001.058(e). However, to modify a proposal for decision, the Commission must "state in writing the specific reason and the legal basis for its determination." Tex. Gov't Code § 2003.049 (h).

Here, the Commission concluded that "route REC1-modified should be constructed for the REC segment instead of REC12 as recommended by the ALJs." The Commission's final order, in relevant part, explained the basis for the change as follows:

> Route REC1-modified is identical to route REC1 except instead of using link G1, it uses links D1b, J1, and L1. The Commission took official notice of two stipulations filed in Docket No. 38743. The parties in that docket have agreed upon routes that would parallel close to link G1. The Commission finds that route REC1-modified minimizes the potential for paralleling a CREZ transmission line route to be selected in Docket No. 38743[5] . . . Also, route REC1-modified mitigates the impact on the Waggoner Estate property. The links that affect the Waggoner Estate property on route REC1-modified are identical to route REC1.

To reflect the modification to the route, the Commission also deleted and modified several of the ALJs' findings of fact relevant to the routing criteria set out in PURA section 37.056(c) and rule 25.101. For example, the Commission changed findings of fact 89, 90, 93, 134, and 138 to state as follows:

89.  Route REC1 is a viable, feasible, and acceptable route from environmental, engineering, and cost perspectives.

90.  Route REC1 is electrically efficient, cost-effective, and will provide a reliable and beneficial path for the transmission of renewable energy from the CREZs to the load centers in [the Electric Reliability Council of Texas].

. . .

---

[5] Tex. Pub. Util. Comm'n, *Application of Electric Transmission Texas, LLC to Amend its Certificate of Convenience and Necessity for the Tesla to Edith Clarke to Clear Crossing to West Shackelford 345kv CREZ Transmission Line in Childress, Cottle, Hardmeman, Foard, Knox, Haskell, Jones, and Shackelford Counties,* Docket No. 38743 (Apr. 18, 2011) (order).

93. Although all of the routes proposed in the application are viable and compliant with applicable routing criteria, the Commission finds route REC1-modified is the best alternative for the REC segment weighing the factors set forth in PURA § 37.056(c) and [§ 25.101(b)(3)(B) of the Texas Administrative Code].

. . .

134. Route REC1-modified represents a good route in terms of cost, environmental integrity, community values, prudent avoidance, aesthetic values, recreational and park areas, use and paralleling of existing compatible right-of-way, and historic values. It presents no engineering constraints.

. . .

138. Route REC1 complies with the policy of prudent avoidance.

The Commission also made additional findings of fact related to the routing issue. For example:

74.A The Commission finds that route REC1-modified minimizes the potential for paralleling a CREZ transmission line route to be selected in Docket No. 38743.[6]

. . .

93A. Route REC1-modified is the same as REC1, except route REC1-modified uses links D1b, H1, and L1 in lieu of link G1.

. . .

141A. The Commission finds that route REC1-modified mitigates the impact on the Waggoner Estate property.

---

[6] The Commission also adopted the ALJs' finding of fact number 71:

71. Crossing or paralleling two CREZ transmissions lines could create reliability risks and should be avoided, if possible, or minimized.

Malone does not contend that these findings, or any of the Commission's findings, are not supported by substantial evidence. *See* Tex. Gov't Code § 2001.174(2)(E). Nor does Malone argue that the Commission lacks statutory authority to examine the evidence anew and revise the ALJs' findings of fact. *See id*. § 2001.174(2)(B). Before the trial court, and now on appeal, Malone solely argues that the Commission's order fails to adequately explain its "specific reason and legal basis" for rejecting the ALJs' routing decision and that the Commission "simply replaced all references in the proposal for decision to 'route REC12' with the words 'route REC-1 modified.'" *See id*. § 2001.174(2)(C). Upon review of the Commission's order, we disagree.

The ALJs' determinations with respect to the routing of the REC segment are purely factual determinations. The Commission's modifications to the ALJs' factual findings and ultimate conclusion on this issue demonstrate that the Commission reevaluated the evidence, as it is statutorily authorized to do, and determined that REC1-modified, not REC12, was the best alternative for routing the REC segment. *See Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 732 (Tex. App.—Austin 2004, pet. denied) (explaining that "section 2003.049 of the government code allows the Commission to reevaluate the evidence admitted at a SOAH hearing to determine whether the ALJ's findings are supported by a preponderance of the evidence"). Further, the Commission explained in its final order that its decision to modify the ALJs' findings on this issue was based on two considerations: (1) the minimization of paralleling with a transmission line established in another docket (as cautioned in the ALJs' proposal for decision) and (2) the mitigation of further impact on an affected landowner. We conclude that the Commission's modifications of the ALJs' findings, conclusions, and proposed order are in compliance with section 2003.049 of the Government Code. Malone's first issue on appeal is overruled.

### Consideration of Affected Landowners

In his second issue, Malone argues that the Commission erred by selecting a route based solely out of concern for a single landowner. As previously discussed, Commission rule 25.101 requires that the Commission adopt a line route that, to the extent reasonable, moderates the impact on the affected community and landowners, unless grid reliability and security dictate otherwise. 16 Tex. Admin. Code § 25.101. Malone argues the Commission acted in an arbitrary and capricious manner by failing to follow the unambiguous language of this rule because it considered only the impact of the REC1 route on one landowner in this case—the Waggoner Estate—at the expense of all others. *See* Tex. Gov't Code § 2001.174(2)(F).

We agree that based on the language of rule 25.101, the Commission must consider the impact on affected landowners when deciding the routing of transmission lines. *See Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) ("Unless the rule is ambiguous, we follow the rule's clear language."). However, rule 25.101 does not require the Commission to adopt a line route that would have *no* impact on *any* landowner. As Malone acknowledges, "transmission lines must be routed somewhere and will inevitably impact some landowners while avoiding others." Instead, the Rule requires a transmission line route that "to the extent reasonable" moderates the impact "on the affected community and landowners." 16 Tex. Admin. Code § 25.101. We will not infer that the Commission failed to follow rule 25.101 and ignored the impact of the route on all landowners, based on the mere fact that the decision negatively impacts one or more landowners, but not others.

In addition, landowner impact is only one of many factors that the Commission is required to consider when deciding transmission line routing. Tex. Util. Code § 37.056(c); 16 Tex. Admin. Code § 25.101(b)(3)(B); *see Dunn*, 246 S.W.3d at 794 (explaining that court on review would not substitute judgment on whether one issue should outweigh findings of fact on other statutory factors). The Commission is also to consider "the criteria in [PURA section 37.056] . . . engineering constraints, and costs" when determining a line route. Tex. Admin. Code § 25.101(b)(3)(B). And, unless a route is agreed to by the various parties, the Commission must consider the criteria stated in subsection (b)(3)(B)(i)-(iv) of rule 25.101 in the selection of the utility's alternative routes. *Id.*

Nothing in the Commission's order suggests that the Commission ignored the transmission line's impact on any landowner, including Malone, when deciding a proper route for the REC segment. It merely noted that route REC1-modified lessened the adverse impact on a particular landowner, the Waggoner Estate. In addition, the order indicates that the Commission weighed evidence demonstrating that the REC1-modified route would best address concerns about cost, engineering constraints, environmental integrity, paralleling of existing lines, and other factors. The Commission issued findings relevant to these factors, which Malone does not challenge in this appeal. These findings support the Commission's conclusion that REC1-modified is the best routing option for the REC segment. Thus, we will not substitute our judgment for the Commission's on whether the potential impact of REC1-modified on affected landowners outweighs such other factors. *See Dunn*, 246 S.W.3d at 794 ("None of these statutory factors is intended to be absolute in the sense that any one shall prevail in all possible circumstances."). Malone's second issue on appeal is overruled.

13

**CONCLUSION**

Having overruled appellant's issues on appeal, we affirm the judgment of the district court.

_____

Scott K. Field, Justice

Before Justices Puryear, Rose and Field

Affirmed

Filed:   August 28, 2013