# IN THE SUPREME COURT OF TEXAS

No. 17-0345

PATRICIA MOSLEY, PETITIONER,

v.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION AND TEXAS DEPARTMENT OF
FAMILY AND PROTECTIVE SERVICES, RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BLACKLOCK, joined by JUSTICE DEVINE and JUSTICE BUSBY, concurring.

The government tried to end Patricia Mosley's career. She may or may not have deserved it. This appeal has nothing to do with that question. Whether or not Mosley deserves to have the government end her career, the Texas Constitution guarantees her it won't happen "except by the due course of the law of the land." TEX. CONST. art. I, § 19. In this instance, for better or worse, "the law of the land" is the elaborate minefield of modern administrative procedure, which non-lawyer citizens like Mosley must successfully navigate in order to vindicate their right to due process. *See* TEX. GOV'T CODE §§ 2001.001–.902. The complexity and expense of this perilous procedural journey no doubt convince many not to bother at all, including many who firmly believe their government has wronged them. But Mosley was not dissuaded. She pressed forward. And when she found herself in one of the minefield's most dangerous spots, her government sent her

what looked for all the world like a lifeline—a friendly letter telling Mosley how to avoid one of administrative procedure's trickiest traps.

The finality of agency-level decision-making and the availability and timing of judicial review can be difficult questions even for lawyers to get right. For proof of that, we need look no further than the dozens of pages of briefing the parties devote to these questions and the sizeable section of the majority opinion their resolution requires. To its credit, the government was apparently so concerned with helping people like Mosley correctly navigate these vexing questions that it promulgated an administrative rule guiding them through the process. The government's letter directed Mosley to that rule. "How helpful," Mosley may have thought. "I may disagree with what my government is doing to me, but at least it wants me to understand how the process works so I can have a fair chance to make my case." After all, who better than the very government that laid the mines to show people how to avoid them?

So Mosley did exactly as the letter and the rule instructed. She sought judicial review within 30 days of receiving the Hearing Order, which the letter said was final the day she received it. In so doing, she relied on a formal agency rule, adopted after notice and comment through the appropriate rulemaking procedures. Such rules have the force of law, we are told. *State Office of Risk Mgmt. v. Lawton*, 295 S.W.3d 646, 648 (Tex. 2009); *Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999). The government routinely insists that courts should trust state agencies to correctly interpret statutes through formal rulemaking. *See, e.g.*, *City of El Paso v. Pub. Util. Comm'n of Tex.*, 344 S.W.3d 609, 618–19 (Tex. 2011); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624–25 (Tex. 2011). *But see Gutierrez-Brizuela v. Lynch*,

2

834 F.3d 1142, 1153 (10th Cir. 2016) (Gorsuch, J., concurring) (describing judicial deference to executive agencies on statutory meaning as "a problem for the people whose liberties may now be impaired not by an independent decisionmaker seeking to declare the law's meaning as fairly as possible—the decisionmaker promised to them by law—but by an avowedly politicized administrative agent seeking to pursue whatever policy whim may rule the day"). And if the government thinks *judges* should defer to agency rules, then surely the government also thinks *regular citizens* can safely follow agency rules without worrying about whether they contradict the underlying statute. Apparently not.

Instead of helping Mosley avoid the procedural mines, it turns out the government's letter—and its rule—instructed her to step right on top of one by pursuing judicial review without first seeking rehearing at the agency. And now the same government that asks courts to put our faith in agency rulemaking says a regular citizen like Mosley was naive to do so. According to the government, instead of simply following its administrative rule, Mosley should first have read Chapter 48 of the Human Resources Code. Then she should have read Chapter 2001 of the Government Code, because Chapter 48 of the Human Resources Code refers to it. Then she should have compared those statutes to the Administrative Code sections quoted in the government's letter. Next, she should have correctly discerned that the Administrative Code sections quoted in the letter do not comport with the requirements of the Human Resources Code and the Government Code on the necessity of a motion for agency rehearing. After reaching that conclusion, she should have known that, even though in some sense the Administrative Code has "the force of law," it is nevertheless inferior to statutes. She therefore should have followed the statutes instead of the rules and moved for rehearing at the agency before seeking judicial review.

Of course, the incorrect administrative rule the government told Mosley to follow only existed because *the government itself* did not interpret the Human Resources Code and the Government Code to require a motion for agency rehearing prior to judicial review. So the government's position boils down to this: Mosley should have ignored our advice and then done a better job than we did of understanding our own administrative procedures. People already have plenty of reasons not to trust their government. Apparently now the government agrees it shouldn't be trusted. And it invites this Court to say that those who do trust the government—even to know its own administrative procedures—may forfeit their right to judicial review of the government's deprivation of their liberty. The Court rightly rejects that invitation. The history of this case gives Texans little reason to trust their government agencies, but hopefully the Court's decision today helps to reinforce their trust in the Constitution.

It is often said that ignorance of the law is no defense. Perhaps not. But if ignorance of the law can't be used defensively by Mosley, it also can't be used offensively by the government. This is a not primarily a case about Mosley's ignorance of the law. It is a case about the government's ignorance of the law. Mosley is not claiming she can't be held responsible for her ignorance of administrative procedure. She is claiming the government can't hold her responsible for the consequences of its own ignorance. She is right. As the Court correctly holds today, article I, section 19 of the Texas Constitution prohibits the government from affirmatively misleading people about their procedural rights and then blaming them for not knowing better. I join the Court's opinion in full.

4

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** May 3, 2019